JONES ET AL. *v.* STATE EX REL. INDIANA LIVESTOCK SANITARY BOARD.

[No. 29,783. Filed January 11, 1960.]

*Emison & Emison,* and *Rabb Emison,* of counsel, of Vincennes, for appellants.

*Edwin K. Steers,* Attorney General, *Ronald S. Lieber,* Deputy Attorney General, for appellee.

PER CURIAM.—The appellee, State of Indiana on the relation of the Indiana Livestock Sanitary Board,

brought seven separate actions in the Gibson Circuit Court under Ch. 80, Acts 1951 [Burns' §§16-1201, *et seq.*, 1957 Supp.] against the appellants, defendants below, as owners of cattle in Gibson County, to compel them by a mandatory injunction to cooperate and assist agents of the board in inspecting and testing their cattle, in compliance with the laws and regulations of the brucellosis program. The trial court granted the mandatory injunction requested. This appeal by the seven defendant owners of cattle has been consolidated, since the same questions arise in each case.

The first question which requires our attention concerns the constitutionality of the act in question. Its validity is attacked mainly on the grounds that the provisions of the statute violate the due process clause, result in the taking and destruction of private property and authorize illegal search and seizure in the inspection provisions thereof.

The statute for the eradication of brucellosis was enacted under the State's police powers for the protection of the public health. In the exercise of such police powers, the State, by legislation, may take steps necessary to eliminate the nuisances such as diseased animals which threaten the public health and, in particular, the milk supply. Inspection and destruction of diseased cattle and livestock for such purpose has been upheld with practically no exceptions in all jurisdictions. *Dederick* v. *Smith* (1936), 88 N. H. 63, 184 Atl. 595; *Affonso Bros.* v. *Brock* (1939), 29 Cal. A. 2d 26, 84 P. 2d 515; *Loftus* v. *Department of Agriculture* (1930), 211 Ia. 566, 232 N. W. 412; *Kroplin* v. *Truax* (1929), 119 Ohio St. 610, 165 N. E. 498; *Neer* v. *State Livestock Sanitary Board* (1918), 40 N. D. 340, 168 N. W. 601; *Adam* v. *City of Milwaukee* (1911), 144

Wis. 371, 129 N. W. 518, 43 L. R. A., N. S. 1066, 228 U. S. 572, 33 S. Ct. 610, 57 L. Ed. 971.

In *Lawton* v. *Steel* (1894), 152 U. S. 133, 136, 14 S. Ct. 499, 38 L. Ed. 385, the Supreme Court of the United States said with reference to the police power:

> "It is universally conceded to include everything essential to the public safety, health, and morals, and to justify the destruction or abatement, by summary proceedings, of whatever may be regarded as a public nuisance."

The general rule is, as stated in the above cases, that a statute enacted under the scope of the police power of a state will not be declared unconstitutional merely because it restricts the liberty or rights of some individuals where such restriction is for the general public health and safety.

It is further urged that the act provides for no notice and hearing with reference to its effectiveness in any particular county. We have previously held that the legislature may enact a law which shall become operative in any particular district or area upon the operation of certain facts provided in the legislative enactment such as, an election to be held therein, or the filing of a petition by a certain number of taxpayers, householders or freeholders, as a condition precedent thereto. Such type of legislation is quite common and its constitutionality is well settled in this state. For authorities on this point see: *Martin* v. *Ben Davis Conservancy District* (1958), 238 Ind. 502, 153 N. E. 2d 125 and authorities cited therein.

On the issue of constitutionality, this court has the duty of upholding legislation if there is any reasonable interpretation which will support its validity. No fatal defects in the constitutionality of the act in question have been presented to us. We

must hold the act within the police power of the state and constitutional.

The statute in question [Ch. 268, §2, Acts of 1955, being §16-1907, Burns' 1959 Supp.] provides with reference to its operation:

"(a) Whenever seventy-five per cent [75%] of the owners of cattle owning at least seventy-five per cent [75%] of the cattle in any county, shall present to the board of county commissioners of such county, a petition stating that they are willing to participate in a program consisting of education, calfhood vaccination and the control of brucellosis infected animals . . . the board of county commissioners shall notify the board [Livestock Sanitary Board] of the filing of such petition and request an estimate of the cost to the county carrying out the program.

. . .

"(d) After the money has been appropriated the board of county commissioners shall enter into a contract with the board [Livestock Sanitary Board] covering the expenditures involved in the program. . . .

. . .

"(h) After a program for the control and eradication of brucellosis has been commenced in any county it shall be the duty of every owner of cattle within the county to comply with all the regulations . . ."

Appellants next contend that, assuming the act to be constitutional, nevertheless the statutory requirements thereof have not been followed in this case. Attention is called to the provision that the petition to be filed with the county commissioners for the institution of the program must contain not only 75% of the owners of cattle, but that such owners must constitute the ownership of "seventy-five per cent [75%] of the cattle in any county." The only record made by the board of

county commissioners in this case as a basis for the action taken by the Indiana Livestock Sanitary Board is contained in the minutes of the board of county commissioners of Gibson County on March 7, 1955:

> "Al Gesel, the county agent, presented a petition signed by a great number of taxpayers to test in order to exterminate Brucellosis. This petition was signed by 75% or more of the cattle owners. This petition is too lengthy to be typed in these minutes but is on file for public inspection."

It is to be noted that there is no finding or statement in the record that the petition was signed by "owners of cattle owning at least seventy-five per cent of the cattle in any county." There is no finding of the sufficiency of the petition, that it is approved by the board of county commissioners, or that pursuant to the statute the Indiana Livestock Sanitary Board be notified of the filing of the petition and requested to make "an estimate of the cost to the county carrying out the program." To read the minutes made, one would come to the conclusion that the board of county commissioners merely recognized the filing of a petition and it was placed on file "for public inspection."

One might draw the conclusion that the county commissioners did not intend to take any action until they could determine whether anyone desired to object to the form or the merits of the petition. Not only does the record of the county commissioners fail to recite the necessary findings under the statute to make the petition proper, but it fails to show any action whatsoever on the part of the county commissioners.

It is a well settled common law principle that a board, commission, administrative body or a corporation

speaks or acts officially only through the minutes and records made at a duly organized meeting.

The statute requires the keeping of a record of the proceedings of the board of county commissioners.

> "Such commissioners shall cause to be recorded, in a book to be kept for that purpose, their proceedings and determinations touching all matters properly cognizable before them. All the books, accounts, vouchers, papers and documents touching the business or property of the county shall be carefully kept by the auditor, and open to the inspection of any person." 1 R. S. 1852, ch. 20, §14, p. 224, Burns' §26-621, 1948 Repl.

The appellee urges upon us that the evidence however shows the county commissioners entered into a contract with the State Board as the statute requires, to carry out the eradication program in the county and therefore that is sufficient proof of the approval. There is, however, no record or minutes of the board of county commissioners in which they approved or authorized such contract. In *Board of Commissioners of Cass Co.* v. *Ross et al.* (1874), 46 Ind. 404, 405, this court makes the following statement:

> "There was no record evidence of any contract with or employment of the appellees by the commissioners, nor does it appear that the commissioners at any time or in any manner, while sitting as such, made any contract with them for such services, or employed or retained them in such business. According to several cases decided in this court, the commissioners can bind the county only when in session according to law, and acting concurrently. It would be making a dangerous precedent to hold that they could do acts binding on the county when not in session, or when acting successively and separately. See *The Board of Commissioners of Fayette Co.* v. *Chitwood*, 8 Ind. 504; *Campbell* v. *Brackenridge*, 8 Blackf. 471; *Archer* v.

*The Board of Commissioners of Allen Co.,* 3 Blackf. 501; *English* v. *Smock,* 34 Ind. 115."

Evidence outside of the minutes and records of the county commissioners that they presumed to enter into a contract is not competent evidence to substitute for the minutes and records of the regular action of a board of county commissioners. Actions of the individual members of a board or commission outside a duly constituted meeting cannot be substituted for the actions at a duly constituted meeting or for the minutes thereof. *Board of Commissioners of LaGrange County* v. *Cutler* (1855), 7 Ind. 6; *The State* v. *Conner and Others* (1840), 5 Blackf. 325; *Byer* v. *The Town of New Castle et al.* (1890), 124 Ind. 86, 24 N. E. 578; *The Board of Commissioners of Franklin County* v. *Bunting* (1887), 111 Ind. 143, 12 N. E. 151.

Of course, where a legally constituted meeting has taken place, but the minutes are defective, nunc pro tunc entries may sometimes be entered to make the record speak the truth. There is no showing in this case that there was any error in the record or any memorandum showing such error existed and that a nunc pro tunc entry was properly made to correct such error. *State ex rel. VanDerVeer* v. *Butcher* (1933), 205 Ind. 117, 185 N. E. 908.

Appellee states that the decision of the board of county commissioners cannot be questioned in this proceeding and says:

"The board of county commissioners, in passing on the sufficiency of the petition did in effect pass upon its own ability to act further, for without an effective petition, the board of county commissioners would have had no jurisdiction to act."

As we stated previously, the record does not show that the board of county commissioners passed "on the suf-

ficiency of the petition." The record does not show the petition was sufficient. In fact, the record does not show that the county commissioners took any action whatever. We agree that without a proper petition filed before it, the board of county commissioners had no jurisdiction to act. The board of county commissioners is a body of limited jurisdiction, and there is no presumption of jurisdiction without a showing to that effect.

In an early case of *Rhode* v. *Davis* (1850), 2 Ind. 53, a road supervisor was sued for trespass and attempted to defend by basing the legality of his actions on the record of the county commissioners ordering the opening of a highway. The court said:

". . . We regard the board of county commissioners as a Court of special and limited jurisdiction, whose records must show, to make them evidence of the validity of the acts of the Court, that the requisitions of the statutes under which the Court acted were strictly complied with, so far as was necessary to give jurisdiction. . . ."

The court then held that the record was insufficient in that case to show that the road was properly open and the road supervisor could not rely thereon for the legality of his actions.

This is not a case of a collateral attack against the judgment or record of the board of county commissioners, but rather is a case in which there is no record of any action, finding, or judgment by the board of county commissioners upon which the statute authorizes the appellee, Indiana Livestock Sanitary Board, to act in the county in question.

We find that the requirements of the statute have not been complied with under which the Indiana Livestock

Sanitary Board may proceed with its program in ▮ Gibson County and therefore, the trial court was without sufficient facts to issue the mandatory injunction empowering the State Board to carry out its program in opposition to the appellant's objections.

The judgment is reversed, with directions that the court enter judgment for each of the appellants.

NOTE.—Reported in 163 N. E. 2d 605.