**Donna Deann HUNT, American Employers' Insurance Company, and Commercial Union Assurance Companies, Appellants (Defendants Below),**

**v.**

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 63A04–8907–CV–00319.**

Indiana Court of Appeals, Fourth District.

Dec. 31, 1990.

Peter G. Tamulonis, John B. Drummy, Kightlinger & Gray, Indianapolis, David O. Kelly, Boonville, for appellants.

Linley E. Pearson, Atty. Gen., Thomas D. Strodtman, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

CHEZEM, Judge.

## CASE SUMMARY

Defendants–Appellants, Donna Deann Hunt, American Employers' Insurance Company, and Commercial Union Assurance Companies, appeal from the judgment entered in favor of Plaintiff–Appellee, State of Indiana. We reverse.

## ISSUE

Appellants present two (2) issues for our review, which we consolidate and restate as follows:

Whether the trial court's findings of fact, conclusions of law and judgment are "clearly erroneous" or deficient under Trial Rule 52.

## FACTS AND PROCEDURAL HISTORY

Defendant Donna Deann Hunt (Hunt) began her employment with the Pike County

School Corporation (PCSC) in 1975. Several years later she became the Treasurer of PCSC. Hunt remained employed in that capacity until on or about May 15, 1982. The payroll records show that Hunt submitted claims and had been paid for significant amounts of overtime.

On September 24, 1984, the State filed a Verified Complaint for Recovery of Public Funds, which alleged that Hunt was indebted to PCSC for the "overtime" of $21,-532.48 received from 1979–1982. At the conclusion of the bench trial, the court took the matter under advisement. As both parties had requested prior to trial, the court then proceeded to enter Findings of Fact, Conclusions of Law, and Judgment. The judgment was for the State in the amount of approximately $21,000.00.

Other facts will be added as needed.

### DISCUSSION AND DECISION

■ Because this was a bench trial and the court made findings of fact and conclusions of law, we will not set aside the findings or judgment unless they are "clearly erroneous." Trial Rule 52(A); *Craig v. Era Mark Five Realtors* (1987), Ind.App., 509 N.E.2d 1144, 1146. In determining whether the findings and judgment are clearly erroneous, this Court will neither reweigh the evidence nor judge the credibility of witnesses. *Id.* We consider only the evidence in the record which supports the judgment along with the reasonable inferences which can be drawn therefrom. *Id.* We will disturb the trial court's findings only if the record is devoid of facts or inferences supporting the findings. *Id.; Best v. Best* (1984), 470 N.E.2d 84, 86.

■ Appellants argue "[t]he sole conclusion that can reasonably be drawn from the evidence is that the payment of compensation to Hunt for the overtime hours which she worked was authorized by the Board of Trustees." They rely in part upon an "au-

thorization" set forth in the Board's minutes of July 10, 1978, which states:

> Mr. Nelson requested extra pay for two employees now working in the central office. Motion was made by Mr. Bell to pay time and a half for any work over 40 hours a week. It was seconded by Mr. Curtis and unanimously carried.

Appellants argue that "[i]t is undisputed that this authorization was never rescinded." In addition, Appellants contend that Hunt's overtime pay must have been authorized because the Board "repeatedly approved Hunt's claims for compensation for overtime." Thus, they challenge the trial court's finding "[t]hat there was no authorization to pay Hunt any additional compensation for overtime employment."

We hold that there *was* authorization for the overtime pay given to Hunt. The payroll was submitted to the Board each pay period. Hunt included therein her own claim for salary and overtime. She prepared the payroll claim form as instructed by Field Examiner, Michael McAllister. Each time the payroll was approved by the Board. This approval constitutes authorization. To hold otherwise would render the Board's approval meaningless. While the State argues that there was no "authorization" for the overtime pay, Hunt was paid exactly as the Board approved her claim. Indeed, the facts and inferences in the record do not support the finding in question. Thus, the finding is "clearly erroneous."

We reverse the judgment entered against Appellants.

RATLIFF, C.J., concurs.

MILLER, P.J., concurs with separate opinion.

MILLER, Presiding Judge, concurring.

I concur in the majority's opinion, but write separately to point out that there was *prior* authorization[1] for the overtime pay

---

1. At oral argument held in this matter, the State conceded that *prior* authorization, not authorization, was the sole issue in this appeal. Likewise, whether Hunt actually put in the time which she claimed and for which she received

overtime payment was a non-issue. The appropriations were not introduced into evidence. However, in its brief, State argues that Hunt was paid for more time than she actually worked and, pointed to time requests for days

given to Hunt. Here, the minutes as quoted in the majority slip opinion (p. 3) indicate that Mr. Stanley Nelson, acting Superintendent, requested extra pay in July 1978 for two "employees now working in the central office." We observe that the two employees were not identified, there was no limitation on when the overtime authorization was to expire, and no discussion of the reason overtime was needed. However, it is undisputed that the two employees referred to were the Accounts Payable Clerk and the Treasurer. The Board approved the request for overtime pay for the individuals who worked these two positions when the school corporation began switching from a manual bookkeeping system to a computerized system. Five months later, in December, 1978, Hunt was appointed Treasurer to replace Kathy Bowman, who had resigned. Bowman had worked and been paid for her overtime in excess of 40 hours per week. Although there was no new authorization, the board resolution does not specify that the overtime would be paid only to a specific, named individual who was working as Treasurer. It would be a reasonable assumption that, since the overtime was authorized to accomplish a task which had not been completed, the overtime payment would be made to the officeholder. *See* also, *State ex rel. Fox v. Board of County Commissioners of Carroll County* (1931), 203 Ind. 23, 178 N.E. 563, where petition which requested an increase of the salary for the then county superintendent of schools, and referred to him by name, did not deprive the successor of the increase in salary because salary

was provided to the officer and was not personal to the first holder of the office.

It is a well-settled common law principle that a board, commission, administrative body or a corporation speaks or acts officially only through the minutes and records made at a duly organized meeting. *Stallard v. Town of St. John, Lake County* (1979), Ind.App., 397 N.E.2d 648, 650; *Jones v. State ex rel. Indiana L.S. Board* (1960), 240 Ind. 230, 163 N.E.2d 605; *Byer v. Town of New Castle* (1890), 124 Ind. 86, 24 N.E. 578. A board is required to keep a record of its proceedings, and "the action of a board can ordinarily be proven only by the record." *Blue v. State* (1936), 210 Ind. 486, 1 N.E.2d 122, 123. Here, the record speaks for itself. Furthermore, our supreme court has held that where a person is induced to perform work, on the faith of the proceedings of a board, the entity may be estopped, after receiving the benefit of the work, from denying that the board records were not properly preserved. *Byer, supra.* Here, the minutes indicate that payment of overtime to Hunt, in her position of Treasurer, was authorized by the board. She worked the extra time and turned in claim forms which the board approved. I, therefore, agree that the judgment against appellants should be reversed.

she was not at work and days when she turned

in time for more hours than were in a day.