GERBERS, LTD., Brent Imel d/b/a Imel Motor Sales, Hiday Motors, Inc., Howard and Joyce Baumgartner d/b/a The Print Shop, and Westfield Insurance Company, Appellants–Plaintiffs,

v.

WELLS COUNTY DRAINAGE BOARD, Appellee–Defendant.

No. 38A02–9208–CV–351.

Court of Appeals of Indiana,
First District.

Feb. 15, 1993.

Rehearing Denied March 30, 1993.

Gary J. Rickner, David R. Steiner, Barrett & McNagney, Fort Wayne, S. Daniel Weldy, III, Carnall and Weldy, Bluffton, for appellants-plaintiffs.

Kenneth Collier–Magar, Stephenson & Kurnik, Indianapolis, for appellee-defendant.

BAKER, Judge.

Plaintiffs-appellants Gerbers, Ltd., Brent Imel d/b/a Imel Motor Sales, Hiday Motors, Inc., Howard and Joyce Baumgartner d/b/a The Print Shop, and Westfield Insurance Co. (collectively, Gerbers), appeal the grant of summary judgment in favor of defendant-appellee Wells County Drainage Board. On appeal, Gerbers contends the trial court erroneously determined the Board was immune from suit under the Indiana Tort Claims Act.[1]

## FACTS

This litigation concerns the Board's management—or lack of it, according to Gerbers—of Messick No. 2 drain, a ditch draining about 275 acres of watershed east of State Road 1 in Bluffton, Indiana. The ditch originates north of property owned by Gerbers, travels south and west, passes under State Road 1, and then, 1,000 feet further, empties into the Wabash River.

Prior to 1985 the ditch was open. In November 1985, Mr. and Mrs. Sleppy, owners of a local business neighboring Gerbers, approached the Board and asked for permission to fill 240 feet of the ditch for the purpose of creating additional parking for their business. Because it had long been the Board's policy to encourage commercial development along State Road 1, which linked Bluffton and Fort Wayne, the Board readily (too readily, according to Gerbers) approved the Sleppys' request, provided the Sleppys bear the entire cost. After receiving approval, the Sleppys installed a pipe, covered it with dirt, and paved over it.

In July 1988, wanting still more parking space, the Sleppys again approached the Board. They proposed to cover the ditch from the point where they had left off earlier all the way to the State Road 1 culvert, and they suggested the use of a thirty-six inch pipe because the culvert as it then existed had a thirty-six inch diameter. The Board again gave its approval and the

Sleppys filled the remaining portion of the open ditch as they had done before.

Shortly thereafter the State revamped State Road 1 in and around Bluffton. It widened the highway from two to five lanes and installed new curbs and drains. It also enlarged the culvert serving the Messick No. 2 drain to accommodate the increased water run-off occasioned by the highway expansion.

On May 25, 1989, a rainstorm of extraordinary proportions deluged the Bluffton area. One of the parties' expert witnesses characterized the rainstorm as a "100–year storm." We are told the flooding was severe enough to cause at least one car to float away. Water backed up along the ditch and collected on Gerbers's property to a depth of several feet, causing extensive damage.

Gerbers filed suit against the Board, alleging negligent management of the Messick No. 2 drain.[2] In response, the Board claimed governmental immunity. Both sides sought summary judgment on the immunity issue, with the Board prevailing. Gerbers appeals.

## DISCUSSION AND DECISION

The general issue we are asked to address is whether the trial court erroneously granted summary judgment in the Board's favor on the basis of the Board's immunity. Gerbers's underlying contention is that the Board is not immune from liability because it utterly failed to evaluate the costs, benefits, and risks of filling the Messick No. 2 drain.

The party seeking summary judgment bears the burden of establishing the propriety of the motion. *Martin Rispens & Son, and Petoseed Co., Inc. v. Hall Farms, Inc.* (1992), Ind.App., 601 N.E.2d 429, 433. Summary judgment is appropriate only if the designated evidentiary matter shows there is no genuine issue as to

1. IND.CODE 34–4–16.5–1 *et seq.*

2. Gerbers also sued the State, alleging negligent design, engineering, and installation of the highway's drainage system. The trial court entered summary judgment in the State's favor on the basis of the common enemy doctrine. Gerbers evidently has not challenged this result.

any material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Perry v. Stitzer Buick* (1992), Ind.App., 604 N.E.2d 613, 616. A party is entitled to judgment as a matter of law if it demonstrates that either the undisputed material facts negate at least one element of the opposing party's claim, or if it raises a valid affirmative defense. *Id.* We will affirm a summary judgment based on any legal theory which is consistent with the facts designated by the parties. *Indiana Dep't of Public Welfare v. Hupp* (1992), Ind.App., 605 N.E.2d 768.

■ The discretionary immunity defense was created by statute. IND.CODE 34-4-16.5-3(6), provides:

Sec. 3. A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from:

\*   \*   \*   \*   \*   \*

(6) the performance of a discretionary function.

Whether a particular act is discretionary and therefore immune is a question of law for determination by the courts, although the question may require an extended factual development. *Peavler v. Monroe County Bd. of Com'rs* (1988), Ind., 528 N.E.2d 40, 46. The governmental entity seeking to establish immunity bears the burden of proving that the challenged act or omission was a policy decision made by the conscious balancing of risks and benefits. *Id.*

We wish to make it clear at the outset exactly what is not in dispute on appeal. At the moment, there is no issue of whether the Board should have required a pipe larger than the thirty-six inches. There is no issue of whether the Board should have approved a different design, or to what degree, if any, the highway improvements contributed to the loss suffered. In short, when the trial court quoted Yogi Berra as saying, "Foresight is always better, afterward," it correctly observed there were no issues of breach and causation before it or us. Rather, the issues before us are first, whether the act of approving the Sleppys'

requests was a "discretionary function" and second, whether the Board consciously balanced the risks and benefits of allowing Messick No. 2 drain to be filled.

■ The "essential inquiry" in determining whether a challenged act is discretionary is "whether the challenged act is the type of function which the legislature intended to protect with immunity." *Id.* In *Peavler,* the supreme court concluded the two Boards of Commissioners were shielded by immunity for actual policy-making decisions regarding traffic warning signs unless they failed to undertake a policy oriented decision-making process. *Id.* at 47. Noting the similarity between a Drainage Board's management of its drainage systems and a Board of Commissioners management of county traffic signs, and applying the factors set forth in the *Peavler* decision, we have no hesitation in concluding the Board's actions in managing Wells County's drainage systems were of the general type meant to be shielded from liability, provided they were the result of conscious risk-benefit analysis.

Gerbers strenuously argues there is absolutely no evidence indicating the Board deliberately weighed the risks and benefits. As a result, it contends, the trial court wrongfully concluded the Board was immune from liability. Although the trial court concluded the Board did consciously balance the benefits and risks of allowing the Sleppys to fill Messick No. 2 drain, it did not cite any specific examples of the Board's behavior illustrating the point.

■ Instead, the trial court wrote "[t]he drainage board was making a governmental policy decision and we have to assume that since the board actually acted, then it had balanced various interests." If, in fact, the trial court assumed that by actually acting, the Board must have consciously weighed the competing interests, the trial court's assumption is erroneous and contrary to *Peavler.* The point is secondary, however, because Gerbers's strident assertions notwithstanding, the record is not barren of evidence supporting the determination that the Board consciously deliberat-

ed upon the matter of the Sleppys' requests.

██ We admit the Board's minutes do not seem to reflect much conscious deliberation. The minutes, however, are not the only source of information in the record. Also before the trial court were the affidavits of James W. Harris and Albert W. Meyer, both longtime Board members. Harris first recited the lengthy history of the Board's policy of encouraging commercial development along State Road 1. After observing the county had insufficient resources to perform the work the Sleppys requested, Harris averred:

> Therefore, after reviewing the plans and specifications of the private contractors for the business owners and insuring that no public costs would accrue, the decision to allow filling in portions of the open ditch of the Messick No. 2 drain on both the west and east sides of State Route 1 were considered as wise choices to fulfill our objectives to enhance business along State Route 1.... Our decisions involved balancing costs, possible potential damages, limited county resources, and future expenses for the proposed changes to the Messick No. 2 drain.

*Record* at 186–187.

> Similarly, Albert Meyer declared:
> We balanced the policy of additional economic growth with the factors that there had not been any critical drainage problems in the watershed and that there were no rules, regulations or standards which the Drainage Board was required to follow that prohibited the Board from permitting open drainage ditches from being tiled and filled in.... As a board member, I exercised my discretion to balance the regulatory objectives of the Board with the economic objectives of the local business community and the county at large and determined that a policy of economic growth outweighed any potential reduction in drainage capacity of the Messick No. 2 drain.

*Record* at 202. Gerbers's contentions that "[t]he affidavit of Albert W. Meyer states nothing more that what the Drainage Board minutes state" is simply untrue, as is its assertion that "no review was done at the time of the Sleppys' request, nor do the exhibits referred to by the Drainage Board have anything to do with the Sleppys' requests." *Reply Brief of Appellants* at 3. To the contrary, the affidavits support the determination that the Board did, in fact, engage in conscious deliberation of the type contemplated in *Peavler.*

The trial court correctly concluded that under IND.CODE 34–4–16.5–3(6), the Board was immune from liability when it approved the request to fill the Messick No. 2 drain, and that therefore the Board was entitled to the summary judgment it sought. Consequently, the judgment is affirmed.

Affirmed.

SHIELDS and SULLIVAN, JJ., concur.