**Wanda S. SCOTT, Appellant–Plaintiff,**

v.

**CITY OF SEYMOUR, Indiana,
Appellee–Defendant.**

No. 36A01–9506–CV–202.

Court of Appeals of Indiana.

Dec. 11, 1995.

W. Brent Gill, Pardieck, Gill & Vargo, Seymour, for appellant.

Edward J. Liptak, Douglas A. Hoffman, Miller Carson Boxberger & Murphy, Bloomington, for appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Wanda S. Scott appeals from the trial court's entry of summary judgment in favor of the City of Seymour (the "City"). Scott filed a negligence action against the City for personal injury she sustained when she fell after her shoe became lodged in a hole in a city street. The trial court entered findings of fact, conclusions of law and summary judgment and determined that the City was immune from liability for Scott's injuries.

We reverse and remand.

### ISSUE

The sole issue for review is whether the City was entitled to governmental immunity under the Indiana Tort Claims Act.

### FACTS

On August 21, 1991, Scott parked her vehicle and walked along North Chestnut Street in Seymour toward the Post Office. As she was walking, Scott's shoe became caught in a hole in the street and she fell and fractured her foot. At the time of Scott's fall, the necessary maintenance and resurfacing of Chestnut Street had been delayed until the end of a downtown redevelopment project. Scott filed her complaint for negligence against the City and alleged that her fall was caused by the City's failure to maintain the area of Chestnut Street in front of the Post Office. The City answered and moved for summary judgment alleging that Scott was contributorily negligent and also raised the defense of governmental immunity. The trial court denied the City's motion. The City then filed a renewed motion for summary judgment based solely on governmental immunity. Following a hearing, the trial court entered summary judgment in favor of the City. The court concluded that any alleged negligence on the part of the City in maintaining its streets was not the proximate cause of Scott's injury and that the City was entitled to governmental immunity as a matter of law. Scott appeals.

## DISCUSSION AND DECISION

### Standard of Review

Summary judgement is appropriate only if the designated evidentiary matter shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). When reviewing a motion for summary judgment, we apply the same standard as the trial court, and we resolve any doubt as to any fact, or inference to be drawn therefrom, in favor of the party opposing summary judgment. *Gilliam v. Contractors United Inc.* (1995), Ind.App., 648 N.E.2d 1236, 1238, *trans. denied.* We must determine whether there is a genuine issue of material fact and whether the law has been correctly applied by the trial court. *Cloverleaf Apartments, Inc. v. Town of Eaton* (1994), Ind.App., 641 N.E.2d 665, 667. The party seeking summary judgment bears the burden of establishing the propriety of the motion. *Gilliam,* 648 N.E.2d at 1238.

### Governmental Immunity

Governmental immunity from suit is regulated by the Indiana Tort Claims Act, Indiana Code §§ 34–4–16.5–1 through 34–4–16.5–22. Pursuant to the Act, governmental entities are subject to liability for torts committed by their agencies or employees unless one of the immunity provisions of the Act applies. *Willis v. Warren Township Fire Dep't* (1995), Ind. App., 650 N.E.2d 321, 323. The entity seeking immunity bears the burden of proving that its conduct falls within one of the exceptions set out in the Act. *Id.*

The City relies on Indiana Code § 34–4–16.5–3(6) which provides that a governmental entity or an employee acting within the scope of his employment is not liable if a loss results from "the performance of a discretionary function." In *Peavler v. Monroe County Bd. of Comm'rs* (1988), Ind., 528 N.E.2d 40, our supreme court adopted the "planning/operation" test for determining whether a particular governmental act is discretionary and entitled to immunity. Essentially, the test provides that a governmental entity is immune from liability when the alleged negligence arises from decisions which

are made at the planning level, as opposed to the operational level. *See id.* at 43. A decision of a governmental entity is a "planning activity" if it is a function involving the formulation of basic policy characterized by official judgment, discretion, weighing of alternatives, and public policy choices. *Id.* at 45.

 The planning/operation test is not a bright-line test but instead focuses upon the particular circumstances of each case. *Mullin v. Municipal City of South Bend* (1994), Ind., 639 N.E.2d 278, 281. In distinguishing between planning and operational functions, proper analysis requires "an inquiry into the nature of the governmental act and the decision-making process involved." *Peavler,* 528 N.E.2d at 45. The essential inquiry in determining whether a challenged act is discretionary is whether the act "is the type of function which the legislature intended to shield with immunity." *Id.* at 46.

 In *Mullin,* our supreme court explained the rationale for discretionary function immunity and stated:

> Immunity for discretionary functions encompasses the notion that certain types of decisions made by the executive and legislative branches of government should not be subject to judicial review because of the separation of powers doctrine, because litigation might have a "chilling effect" on the government's resolution of difficult policy issues, or because certain governmental decisions cannot be adequately reviewed using a traditional tort standard of negligence.

*Mullin,* 639 N.E.2d at 281. Accordingly, the discretionary function exception is not absolute but insulates only those significant policy and political decisions which cannot be assessed by customary tort standards. *Peavler,* 528 N.E.2d at 45. It is not the province of the court to second-guess the wisdom of those executive or legislative decisions which were the result of a policy oriented decision-making process. Rather, that exercise of power is held accountable only to the Constitution or the political process. *Id.*

 The question of whether a particular government activity is a discretionary function is a question of law for the court.

*Mullin,* 639 N.E.2d at 281. Because immunity pursuant to the Tort Claims Act is in derogation of the common law, it must be strictly construed against limitations on a claimant's right to bring suit. *Hinshaw v. Board of Comm'rs of Jay County* (1993), Ind., 611 N.E.2d 637, 639. We address the City's claim of immunity in light of this standard.

## A: Resurfacing of City Streets

We first consider whether the trial court erred when it concluded that the City exercised governmental discretion in its decision to delay the resurfacing of Chestnut and other city streets. Scott asserts that the decision was not the result of a policy-oriented decision-making process as contemplated in *Peavler.* We agree.

The record shows that at the time of Scott's fall, the City was in the midst of a downtown redevelopment project. Ongoing since the late 1980's, the redevelopment project included the installation of trees, tree grates, benches, concrete curbs and gutters, banners, concrete sidewalks, new street lights and underground wiring. The project required the cutting of several downtown streets for the underground wiring and for curb installations. The City's contribution to the redevelopment project was the necessary resurfacing of the affected downtown streets through the application of asphalt overlay. However, the application of overlay was delayed on the affected streets, including Chestnut Street where Scott was injured, until other work on the project had been completed. The City asserts the decision to delay the resurfacing of the downtown area is entitled to discretionary immunity.

The issue before us is whether the City's decision to delay the application of asphalt overlay to the affected downtown streets resulted from the formulation of basic policy characterized by official judgment, the weighing of alternatives, discretion and public policy. *See Peavler,* 528 N.E.2d at 45. We are concerned specifically with the actual decision-making process which occurred in this instance.

The Seymour Board of Public Works (the "Board") is the governmental entity charged with legal authority and responsibility for the maintenance and resurfacing of city streets. In support of its claim of immunity, the City designated the deposition of Jerry Hartsell, the City Engineer and Director of Public Works. Hartsell testified that he decided that the application of asphalt overlay on the affected downtown streets, including Chestnut Street, should be delayed until the end of the redevelopment project so that the overlay would be applied only one time, thereby conserving the City's resources. Hartsell stated that his decision was based on the availability of funds and also a concern for efficiency to insure that the streets would not be "dug or cut up" after the overlay was applied.

Seymour Mayor John Burkhart testified that as a member of the Board and as the chief executive officer of the City, he believed that the Board had authorized the delay of asphalt overlay to the downtown area. Record at 162–63. He explained that the overlay was postponed until the end of the redevelopment and until CSX Railroad had completed a new crossing on Chestnut Street. Mayor Burkhart defended the soundness of the decision and testified that "you wouldn't want to do the asphalt and then cut it back up and put the railroad in, it's like painting a wall then tearing the wall out." Record at 164.

Finally, the City designated the deposition of another Board member, councilman Art Killion. Killion testified that while he was not a member of the Board at the time the decision to delay resurfacing of the downtown streets was made, he was aware that based on the recommendation of Jerry Hartsell, application of the overlay had been postponed until the end of the project. Record at 230. Killion explained that the Board generally attempts to use available funds in a manner to obtain the best results for the taxpayers' money. He stated that "it's much cheaper to wait until something is done so you can do a complete job ... you don't want to go in there and do something, overlay, and then turn around and have to cut it out and then turn around and spend more taxpayer money then going back in and trying to

overlay it again or to repair it." Record at 230.

The City claims that the designated evidence shows the Board specifically approved the delay in resurfacing the downtown streets, but the record does not support that contention. When asked whether he was required to get Board approval for his decisions, Hartsell stated "[n]o, there's no requirement for that. If [the Board] don't like something I'm doing, they'll sure let me know about it." Record at 101. Further, when asked whether there was any specific approval of the decision to delay resurfacing of the streets or any Board minutes evidencing such approval, Hartsell answered "[n]o, I wouldn't think so." Record at 103.

 We find no evidence of official Board action. It is well-settled in Indiana that boards and commissions speak or act officially only through the minutes and records made at duly organized meetings. *Brademas v. St. Joseph County Comm'rs* (1993), Ind.App., 621 N.E.2d 1133, 1137 (citing *Jones v. State ex rel. Indiana Livestock Sanitary Bd.* (1960), 240 Ind. 230, 236–37, 163 N.E.2d 605, 608). Evidence outside of the board's minutes and records that the board presumed to act in its official capacity is not competent evidence to substitute for the minutes and records of regular board action. *Jones,* 240 Ind. 230, 238, 163 N.E.2d 605, 608. The actions of individual members of a board or commission outside a meeting cannot be substituted for the actions at a duly constituted meeting or for the minutes thereof. *Id.; see also Carter v. Allen* (1994), Ind.App., 631 N.E.2d 503, 509 (testimony of two county commissioners concerning intent to incorporate town was inadmissible to prove legislative intent of full body as boards and commissions speak only through their minutes).

 In the present case, there is no record or minutes of any Board meeting or action taken by the Board concerning its "policy decision" to postpone resurfacing the affected streets. Indeed, the evidence shows that the delay in resurfacing downtown area streets was made by Hartsell alone and not by the entity responsible for making such decisions. Hartsell, Mayor Burkhart, and

Killion each expressed his understanding of the policy and budget considerations behind the decision to postpone application of the asphalt overlay. Without considering the merits of the decision, explanations of individual City officials outside of a meeting are not a substitute for official action and, therefore, are legally insufficient to confer discretionary function immunity. There is no evidence that the Board consciously weighed the risks and benefits of any decision while acting as a Board.

■■■■■ As we have noted, the fundamental concept underlying governmental immunity is the notion that certain kinds of executive or legislative branch policy decisions should not be subject to judicial review. *Peavler*, 528 N.E.2d at 44. Discretionary immunity, however, was not intended to protect a policy decision made by one Board member. Public policy decisions committed to a board or commission and entitled to discretionary immunity must be made in public in the manner provided by law, not on an informal basis outside of the public record. Without any minutes of a duly constituted Board meeting, we cannot conclude that the City, acting through its Board of Public Works, exercised official judgment or engaged in the necessary policy oriented decision-making process.[1]

The trial court here relied on our decision in *City of Crown Point v. Rutherford* (1994), Ind.App., 640 N.E.2d 750, *trans. denied,* in which we held that Crown Point's program to renovate sidewalks was entitled to discretionary immunity. *Id.* at 755. The plaintiff in *Rutherford* sought to hold Crown Point liable for negligence after she tripped and fell on a portion of broken sidewalk. At the time of the accident, Crown Point had instituted a comprehensive scheme for sidewalk renovation and repair, targeting specific areas while excluding others. *Id.* at 754.

Unlike the present case, in *Rutherford* there was ample evidence of a Board decision to utilize public monies and target certain areas for maintenance and renovation such as school zones, children's play areas, and other high traffic zones. The parties did not dispute that Crown Point's Board of Public Works had taken official action when it made its decision. The only disputed issue was whether or not the Board's action was a "planning" function involving the formulation of basic policy entitled to immunity. We noted in *Rutherford* that the key decision-makers contemplated and balanced public policy factors and weighed budgetary considerations in the allocation of resources. *Id.* at 754. In finding governmental immunity, we reasoned that Crown Point had made discretionary decisions which clearly involved the exercise of judgment and the formulation of basic policy on the part of Crown Point officials. *Id.* at 755.

Similarly, in *Voit v. Allen County* (1994), Ind.App., 634 N.E.2d 767, *trans. denied,* the plaintiffs sought to hold the County liable for its failure to make improvements to a county road. We concluded that the County, in determining which improvements would be made to county highways, had engaged in the kind of policy-making decision that was immune from liability. *Id.* at 770. We based our conclusion on evidence of the "systematic process" used by the County in making its decision. *Id.*

Here, without a contemporaneous public record of Board action, there is no competent evidence that the City engaged in a systematic decision-making process involving the formulation of basic policy characterized by official judgment. The trial court erred when it determined that the City was entitled to governmental immunity on this issue.

### B: General Maintenance

Apart from the City's resurfacing project, Scott contends that the City was negligent in its failure to perform minor maintenance and patching in the area where she was injured. The trial court never reached the issue of governmental immunity with regard to any alleged negligence on the part of the City in

---

1. In *Gerbers, Ltd. v. Wells County Drainage Bd.* (1993), Ind.App., 608 N.E.2d 997, we considered affidavits in the record that supported a determination that the Drainage Board had engaged in conscious deliberation of the type contemplated by *Peavler. Id.* at 1000. The affidavits supplemented the Board's minutes. Unlike here, in *Gerbers* there was no question that the decision at issue had been made by the Board at a public meeting.

failing to patch the area prior to Scott's fall. Instead, based on the testimony of three of the City's witnesses, the court found that Scott fell in an area on Chestnut Street along a concrete gutter where any general repair or asphalt patch work would have been ineffective because the patching material could not be made thin enough for it to adhere to the concrete surface. Finding of Fact Number 2, Record at 83B. The trial court determined that the only remedy for the area was resurfacing through the application of asphalt overlay which, as we have discussed above, was delayed. Therefore, the trial court concluded, as a matter of law, that the City could not be liable for any alleged negligence in the failure to maintain or repair Chestnut Street because the place where Scott fell could not be remedied with an asphalt patch.

Scott asserts that a genuine issue of material fact exists concerning whether the area in which she fell could have been repaired with general maintenance and minor patch work. Specifically, Scott asserts that the trial court failed to consider conflicting evidence on the issue. We agree.

In response to the City's motion for summary judgment, Scott submitted the affidavit of a safety engineer, G. Anthony Ragu. Ragu stated that it was his opinion that there were low cost methods available to the City for patching holes such as the one in which Scott fell. Record at 76. The City moved to strike portions of Ragu's affidavit and argued that Ragu's averment was merely a conclusory statement without explanation of these purported low cost methods for repair. The trial court never ruled on the City's motion but apparently disregarded Ragu's statements in its summary judgment ruling.

 On appeal, the City maintains that Ragu's affidavit is insufficient to create a genuine issue of material fact for trial. In determining whether a genuine issue of material fact is present, the trial court faced with a motion for summary judgment is necessarily concerned about matters which may serve as evidence, that is, matters which may be taken as true if the case goes to trial. *Tannehill by Podgorski v. Redding* (1994), Ind.App., 633 N.E.2d 318, 321, *trans. denied.*

Affidavits used for summary judgment purposes are evidential in nature. *Lee v. Schroeder* (1988), Ind.App., 529 N.E.2d 349, 352, *trans. denied.* Therefore, a court should disregard any inadmissible information contained in an affidavit. *Id.* Under Trial Rule 56(E), it is not necessary that the facts presented by affidavit be sufficient to support a verdict; rather, they need only be admissible as evidence. *Yang v. Stafford* (1987), Ind. App., 515 N.E.2d 1157, 1162, *trans. denied.*

 Affidavits supporting or opposing summary judgment motions must be made upon personal knowledge of the affiant and must show that the affiant is competent to testify upon the matter. Trial Rule 56(E); *LeMaster v. Methodist Hosp.* (1992), Ind. App., 601 N.E.2d 373, 376. When an affiant makes a conclusion of fact, it must appear that the affiant had an opportunity to observe and did observe the matters about which he or she testifies. *LeMaster*, 601 N.E.2d at 377. The facts or data upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. Ind.Evidence Rule 703. Unlike lay witnesses, experts may testify to opinions based on inadmissible evidence, provided that it is the type of information reasonably relied upon by experts in the field. *See* Ind.Evidence Rule 703.

 Ragu's education and credentials were supported by a curriculum vitae and the City does not challenge his competence as an expert. The City asserts that Ragu's statement was "conclusory" and not based upon personal knowledge as the affidavit does not indicate that Ragu ever had an opportunity to observe the area in which Scott fell. Although Ragu had not visited the site of Scott's fall, he based his expert opinion on deposition testimony of the City's witnesses describing the area, photographs of the area, as well as his education and experience as a safety engineer. Thus, Ragu's opinion was not without foundation as it was based on facts made available to him in the record. To the extent that his statement was conclusory, any lack of detail in the affidavit goes to the weight and credibility of the affidavit

and not to whether it is adequate to create a genuine issue. *See Jordan v. Deery* (1993), Ind., 609 N.E.2d 1104, 1111. We conclude that Ragu's opinion was admissible and was sufficient to create a genuine issue of material fact. Therefore, the trial court erred when it determined, as a matter of law, that the area in which Scott fell could not be repaired with general maintenance.

On the question of immunity, we further conclude that any failure by the City to maintain and repair Chestnut Street is not entitled to immunity under the *Peavler* standard. As with the decision to delay the resurfacing project, based on the record before us, we cannot say that any alleged failure by the City to patch the area in which Scott fell was the result of a systematic public process involving the conscious balancing of risks and benefits. *See Voit,* 634 N.E.2d at 770.

## CONCLUSION

In sum, under these circumstances the City was not entitled to summary judgment based on discretionary immunity under the Tort Claims Act. Genuine issues of material fact remain for trial concerning whether the City was negligent when it delayed the resurfacing of downtown streets. Further, genuine issues of material fact exist whether the place where Scott fell could have been repaired or patched, and if so, whether the City was negligent in not doing so.

Reversed and remanded.

BAKER and HOFFMAN, JJ., concur.