FILED

Jul 25 2016, 8:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



| ATTORNEY FOR APPELLANTS | ATTORNEY FOR APPELLEE |
|---|---|
| James E. Ayers | Sheri Bradtke McNeil |
| Wernle, Ristine & Ayers | Kopka Pinkus Dolin PC |
| Crawfordsville, Indiana | Crown Point, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Darrell Birge and Sandra Birge, *Appellants-Plaintiffs,* | July 25, 2016 |
| | Court of Appeals Case No. 54A01-1509-PL-1495 |
| v. | Appeal from the Montgomery Circuit Court |
| Town of Linden, Indiana, *Appellee-Defendant.* | The Honorable Peggy Lohorn, Special Judge |
| | Trial Court Cause No. 54C01-1409-PL-774 |

**Robb, Judge.**

# Case Summary and Issue

[1] Darrell and Sandra Birge own farmland in Montgomery County, Indiana. In 2014, the Birges filed a complaint against various governmental entities and independent contractors after modifications to an existing drainage system caused flooding on their property. The complaint named the Town of Linden ("Town") as a defendant. The Town filed a motion to dismiss for failure to state a claim, which the trial court granted. The Birges now appeal the dismissal of their claims against the Town. Concluding the trial court erred in dismissing the Birges' complaint for failure to state a claim, we reverse and remand.

# Facts and Procedural History

[2] On September 22, 2014, the Birges filed a Verified Complaint for Nuisance and Damages against (1) the Town; (2) Montgomery County; (3) Montgomery County Drainage Board ("Drainage Board"); (4) Montgomery County Board of Commissioners ("Board of Commissioners"); (5) Montgomery County Surveyor ("County Surveyor"); (6) Banning Engineering, P.C.; and (7) Harvey Construction Company, Inc. On November 13, 2014, the Town filed an answer, which raised as an affirmative defense governmental immunity under the Indiana Tort Claims Act ("ITCA"). With leave of the trial court, the Birges filed an amended complaint on February 10, 2015, alleging in relevant part:

> 4. That . . . Montgomery County by the [Drainage Board], prior to 2012, and in accordance with I.C. 36-9-27-34, had established

and maintained a farm drainage system designated Montgomery County Hose Drain, to collect and remove underground water from agricultural land to the south of [the Birges'] property, a portion of which drain was located within a right-of-way across [the Birges'] property dedicated for use as an agricultural farm drainage ditch.

5.  That said Hose Drain was a regulated farm drain, repairs and maintenance of which were to be supervised by the County Surveyor and funded by benefit assessments and maintained by the [Drainage Board] in accordance with I.C. 36-9-27-34(a), to collect and carry away underground water from the agricultural fields of the farmers of Montgomery County, flowing south to north through the [Town], and to thus drain the farm lands of [the Birges] and others.

6.  *That the [Town] in an effort to reduce flooding from storm water, applied for funds to improve its storm drainage system, and the [Drainage Board] did consort and conspire with the [Town] to improperly utilize the Hose Drain right-of-way and the statutory powers of the Drainage Board to assist the Town to build new components of a municipal storm water drainage system under the pretense that such was an agricultural drain* and in the course of such conspiracy abused its statutory power as set out in I.C. 36-9-27-34(a) to wrongfully assess payment for such Town storm drain from the owners of agricultural land in the water shed, including the land owned by [the Birges], who were assessed in the sum of $9,000 for construction of the Linden Town Storm Drain, which was of no benefit to [the Birges] or to other agricultural landowners.  The [Drainage Board] agreed to and did authorize the construction of the Linden Storm Sewer to follow the course of the original agricultural Hose Drain and to disrupt and block the operation of the Hose Drain.

7.  That by reason of such conduct [Montgomery] County by the intentional act of its Surveyor and Drainage Board did, in 2012, abandon and destroy said agricultural drain by cutting it, and by

constructing a new closed storm water drain which does not drain the subsurface water from [the Birges'] land, but instead carries only part of the surface water from the [Town] through such land, and by reason of defective design and construction collects and deposits large portions of storm water from the Town into the subsurface of the property of [the Birges] . . . . The Construction did also block and prevent the prior subsurface drainage from the property of [the Birges] along the right-of-way of said former Hose Drain, such that underground water pools and is not carried away, and surface water pools and is not carried away, causing water to accumulate and the water table to rise creating a nuisance to [the Birges] by reason of flooding and bog-like conditions, ruination of farmland, failure of [the Birges'] residential septic system, and [destruction of] the right of [the Birges] to peaceful possession and use of their premises . . . . The result of said acts by the County has been the inability to farm approximately 13 acres of prime farmland because of the chronic wet and bog-like condition thereof.

8. That [the Birges] did, prior to such placement, specifically warn the County Surveyor and the Drainage Board of the defective design, and probable consequences of the planned construction of the Linden Storm Sewer line on and across [the Birges'] property, and requested reconsideration and competent engineering review. The County officials, namely the County Surveyor and the [Drainage Board,] proceeded despite such requests and warnings and without referral for a competent engineering evaluation. Following construction, when the predicted flooding occurred and its effects were discovered on October 12, 2012, when harvest of some areas proved impossible, [the Birges] sought relief from the [Board of Commissioners], which has failed to undertake any corrective action. . . . No significant action has been taken by any Defendant to correct such conditions.

9. That [the Birges] are not able by any means to prevent such discharge, flooding, and accumulation of storm water or to

accomplish the removal of the excess water, and each of those conditions constitutes a nuisance preventing the reasonable use of the farm property of [the Birges], and interfering with the use, value and habitability of [the Birges'] home, and reducing the agricultural value of [the Birges'] land and also [the value of] that portion of [the Birges'] land which is a platted subdivision . . . .

Appendix of the Appellant at 27-29 (emphasis added).

[3] Based on the foregoing, the amended complaint sought an injunction ordering the abatement of the nuisance, but "[i]n the event the Court does not grant a mandatory injunction," the complaint further asserted a claim for inverse condemnation. *Id.* at 32-33. Specifically, the complaint alleged that,

by reason of the acts of Montgomery County and [the Town] the property of [the Birges] has been rendered of substantially reduced value in that (1) [the] water table has been elevated such that access across the area is impeded or prevented, (2) cultivation of many acres is prevented, (3) the home of [the Birges] is rendered unsalable and its habitability is in question and its value reduced, and (4) areas of platted subdivision have been rendered unbuildable and therefore of no value for development on account of the artificially high water table . . . .

*Id.* at 33.

[4] On March 2, 2015, the Town filed a motion to dismiss for failure to state a claim, which the trial court granted. This appeal followed.

# Discussion and Decision

## I. Standard of Review

We review de novo the trial court's grant or denial of a motion to dismiss based on Trial Rule 12(B)(6). *Kitchell v. Franklin*, 997 N.E.2d 1020, 1025 (Ind. 2013). "A motion to dismiss for failure to state a claim tests the legal sufficiency of the claim, not the facts supporting it." *Id.* In conducting our review, we accept as true the facts alleged in the complaint. *Trail v. Boys & Girls Clubs of Nw. Ind.*, 845 N.E.2d 130, 134 (Ind. 2006). "[W]e view the pleadings in the light most favorable to the nonmoving party, with every reasonable inference construed in the nonmovant's favor." *Babes Showclub, Jaba, Inc. v. Lair*, 918 N.E.2d 308, 310 (Ind. 2009). A complaint may not be dismissed for failure to state a claim "unless it is clear on the face of the complaint that the complaining party is not entitled to relief." *Charter One Mortg. Corp. v. Condra*, 865 N.E.2d 602, 605 (Ind. 2007).

## II. Failure to State a Claim

The complaint asserts claims for nuisance, civil conspiracy, and inverse condemnation. In granting the Town's motion to dismiss for failure to state a claim, the trial court concluded it was clear on the face of the complaint that discretionary function immunity applies in this case and the Birges failed to allege facts supporting a claim for civil conspiracy. We conclude otherwise.

# A. Discretionary Function Immunity

The ITCA governs tort claims against governmental entities and public employees. *Veolia Water Indianapolis, LLC v. Nat'l Trust Ins. Co.*, 3 N.E.3d 1, 5 (Ind. 2014). Governmental entities may be subject to liability for tortious conduct unless the conduct falls within an immunity granted by the ITCA. *Id.* Indiana Code section 34-13-3-3(7) provides, "A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from . . . [t]he performance of a discretionary function." Whether an act constitutes the performance of a discretionary function is a question of law for the court's determination. *City of Beech Grove v. Beloat*, 50 N.E.3d 135, 138 (Ind. 2016). As an exception to the general rule of liability, discretionary function immunity is narrowly construed. *Id.* We apply the "planning/operational test" our supreme court adopted in *Peavler v. Bd. of Comm'rs of Monroe Cnty.*, 528 N.E.2d 40 (Ind. 1988):

> Under the planning/operational dichotomy, the type of discretion which may be immunized from tort liability is generally that attributable to the essence of governing. Planning activities include acts or omissions in the exercise of a legislative, judicial, executive or planning function which involves formulation of basic policy decisions characterized by official judgment or discretion in weighing alternatives and choosing public policy. Government decisions about policy formation which involve assessment of competing priorities and a weighing of budgetary considerations or the allocation of scarce resources are also planning activities.

*Id.* at 45 (citations omitted). In applying this test, "we distinguish between decisions involving the formulation of basic policy, entitled to immunity, and decisions regarding only the execution or implementation of that policy, not entitled to immunity." *Gary Cmty. Sch. Corp. v. Boyd*, 890 N.E.2d 794, 800 (Ind. Ct. App. 2008) (quotation omitted), *trans. denied.* "The critical inquiry is not merely whether judgment was exercised but whether the nature of the judgment called for policy considerations." *Peavler*, 528 N.E.2d at 45 (quotation omitted). "The question may require an extended factual development . . . ." *Id.* at 46.

[8]  In *City of Beech Grove*, 50 N.E.3d 135, a woman fell and injured herself when she stepped into a pothole on a city street. The woman sued the City for her injuries, alleging the City negligently failed to maintain the street. The City claimed discretionary function immunity under the ITCA and moved for summary judgment. The trial court denied the City's motion for summary judgment and certified the order for interlocutory appeal. This court accepted jurisdiction and reversed in a divided opinion. Our supreme court granted transfer and affirmed the denial because the designated evidence failed to demonstrate the City engaged in a policy decision. *Id.* at 136.

[9]  In support of its motion for summary judgment, the City designated an affidavit from the Mayor and minutes from City Council and Board of Works and Safety meetings. The City argued the designated evidence showed the City executed a complete road reconstruction project in lieu of piecemeal repairs due to a policy determination. With respect to the Mayor's affidavit, our supreme court concluded the affidavit could not be relied upon because "[t]he actions of

individual members of a board or commission outside a meeting cannot be substituted for the actions at a duly constituted meeting or for the minutes thereof." *Id.* at 140 (alteration in original) (quoting *Scott v. City of Seymour*, 659 N.E.2d 585, 590 (Ind. Ct. App. 1995)). As for the minutes from City Council and Board of Works and Safety meetings, the court noted the minutes reflected "the steps taken to fund a project that had already been discussed, planned, and approved." *Id.* at 142. The minutes did not reveal "any discussion about how the area encompassed within the Project was decided upon, why specific repairs were selected over others, what would be done about road damage in the meantime, why total reconstruction was necessary, or the costs of total reconstruction compared to conducting other individual repairs." *Id.* Ultimately, although the ongoing discussions regarding the funding and timeline for the project could support an inference that the City, at some point, engaged in a policy discussion, the court affirmed the denial of summary judgment because the minutes did not reveal an actual weighing of options or cost-benefit analysis with respect to the decision to suspend routine maintenance in favor of the project. *Id.* at 142-43; *see also Gerbers, Ltd. v. Wells Cnty. Drainage Bd.*, 608 N.E.2d 997, 999 (Ind. Ct. App. 1993) ("If . . . the trial court assumed that by actually acting, the Board must have consciously weighed the competing interests, the trial court's assumption [was] erroneous and contrary to *Peavler*."), *trans. denied*.

[10] Given the standard enunciated in *City of Beech Grove*, we cannot say it is "clear on the face of the complaint" that the Town is entitled to discretionary function

immunity. *Charter One Mortg. Corp.*, 865 N.E.2d at 605. The complaint alleges, "the [Town] in an effort to reduce flooding from storm water, applied for funds to improve its storm drainage system." App. at 27. But the fact the Town applied for the funds does not, in itself, demonstrate a conscious weighing of options with respect to the Town's decision to improve its storm drainage system. As our supreme court observed in *Peavler*, the question of discretionary function immunity "may require an extended factual development." 528 N.E.2d at 46. Accepting as true the facts alleged in the complaint, we believe the question of immunity in this case requires additional factual development. At this stage in the proceedings, the trial court erred in determining the Town is entitled to discretionary function immunity.

[11] We express no opinion as to the ultimate resolution of the immunity issue, but to the extent the trial court concluded immunity under the ITCA would bar the Birges' claim for inverse condemnation, the trial court erred. If the government takes property but fails to initiate eminent domain proceedings, Indiana Code section 32-24-1-16 permits the owner of the property to recover money damages in an action for inverse condemnation. *Murray v. City of Lawrenceburg*, 925 N.E.2d 728, 731 (Ind. 2010). The immunity provisions provided by the ITCA do not apply to claims for inverse condemnation, *see* Ind. Code § 34-13-3-1 (stating Indiana Code chapter 34-13-3 "applies only to a claim or suit in tort"), and could not apply in any event because just compensation is constitutionally required, *see Murray*, 925 N.E.2d at 731 (stating the Indiana Constitution and the Fifth Amendment of the United States Constitution require just

compensation if the State exercises its inherent authority to take private property for public use). If the Town is entitled to discretionary function immunity in this case, immunity will extend only to tort claims brought under the ITCA.

## B. Civil Conspiracy

[12] "A civil conspiracy is a combination of two or more persons who engage in a concerted action to accomplish an unlawful purpose or to accomplish some lawful purpose by unlawful means." *Miller v. Cent. Ind. Cmty. Found.*, 11 N.E.3d 944, 962 (Ind. Ct. App. 2014), *trans. denied*. The complaint alleges the Town conspired with the Drainage Board to "improperly utilize" the existing right-of-way and construct new components for the municipal storm drainage system, which "caus[ed] water to accumulate and the water table to rise creating a nuisance to [the Birges] by reason of flooding and bog-like conditions . . . ." App. at 27-28. The trial court concluded the Birges failed to plead facts supporting a claim for civil conspiracy because they did not allege the Town acted unlawfully or to accomplish an unlawful purpose. We disagree.

[13] Civil conspiracy is not an independent cause of action. *Am. Heritage Banco, Inc. v. McNaughton*, 879 N.E.2d 1110, 1115 (Ind. Ct. App. 2008). It must be alleged with an underlying tort. *Crystal Valley Sales, Inc. v. Anderson*, 22 N.E.3d 646, 653 (Ind. Ct. App. 2014), *trans. denied*. Unlike criminal conspiracy, the gist of a civil conspiracy is not the unlawful agreement, but the damage caused by acts committed in pursuance of the agreement. *K.M.K. v. A.K.*, 908 N.E.2d 658,

663-64 (Ind. Ct. App. 2009), *trans. denied*; 16 Am. Jur. 2d *Conspiracy* § 53 (2016). Thus, an allegation of civil conspiracy is "just another way of asserting a concerted action in the commission of a tort." *Boyle v. Anderson Fire Fighters Assoc. Local 1262*, 497 N.E.2d 1073, 1079 (Ind. Ct. App. 1986), *trans. denied.*

[14] In its order granting the Town's motion to dismiss, the trial court recognized the pleaded facts may support an underlying claim for nuisance[1] but concluded the tort of nuisance does not constitute an "unlawful" purpose or means. *See* App. at 61 (noting the Birges "label the planning and construction [of the storm drain] as 'wrong' because of the alleged result of nuisance, not because of an unlawful purpose or means"). This conclusion was error. An allegation of civil conspiracy is merely an assertion of concerted action in the commission of a tort causing damage to the Birges. Accordingly, the trial court erred in concluding the Birges failed to allege facts supporting a claim for civil conspiracy.

# Conclusion

[15] The trial court erred in dismissing the Birges' complaint for failure to state a claim. We therefore reverse and remand for further proceedings consistent with this opinion.

---

[1] Indiana Code section 32-30-6-6 defines a nuisance as: "Whatever is: (1) injurious to health; (2) indecent; (3) offensive to the senses; or (4) an obstruction to the free use of property; so as essentially to interfere with the comfortable enjoyment of life or property . . . ."

Reversed and remanded.

Najam, J., and Crone, J., concur.