**Thomas B. BRADEMAS,
Appellant–Plaintiff,**

v.

**ST. JOSEPH COUNTY COMMISSION-
ERS, Joseph D. Zappia, Richard Larri-
son, Richard D. Jasinski and St. Joseph
County Attorney Anthony Zappia, Ap-
pellees–Defendants.**

**No. 71A04–9302–CV–41.**

Court of Appeals of Indiana,
Fourth District.

Sept. 30, 1993.

Thomas B. Brademas, pro se appellant.

Richard W. Morgan and David R. Kibbe, Barnes & Thornburg, South Bend, for appellees.

CHEZEM, Judge.

### Case Summary

Plaintiff–Appellant, Thomas B. Brademas, Sr. (Brademas), appeals from the trial court's grant of summary judgment in favor of Defendants–Appellees, St. Joseph County Commissioners (Commissioners) and the St. Joseph County Attorney, Anthony Zappia (Zappia). We affirm.

### Issues

Brademas presents three (3) issues for our review which basically challenge the appropriateness of the trial court's grant of summary judgment. We consolidate and restate those issues into one (1) issue: whether Brademas properly brought a public lawsuit pursuant to Indiana Code 34–4–17–1.

### Facts and Procedural History

In February of 1992, the St. Joseph County Highway Central Garage fuel storage tank was leaking. Fearing contamination, the Commissioners voted on March 3, 1992, to declare an emergency and to remove the tanks at the central garage. The contract for the removal of the tanks was awarded to B & B Equipment Company (B & B). Commissioner Rodich drove to Indianapolis to complete the necessary forms required by the Indiana Department of Environmental Management (IDEM) to remove the tanks. As a precautionary measure, Commissioner Rodich also completed forms for the county's other four garages

which also had underground fuel storage tanks.

When the Central tank was closed presumably in March of 1992, the surrounding soil was found to be contaminated. The county attorney, Zappia, advised the Commissioners to continue to use their emergency powers to forego advertising for bids for the removal of the remaining tanks at the four other garages. Three bids were requested, and B & B was awarded the contract to remove all of the other tanks.

In September of 1992, Brademas filed his complaint alleging among other things that the Commissioners and Zappia entered into a conspiracy to evade the law. Brademas alleges no emergency existed because the Commissioners and Zappia should have foreseen the leaking problem, and that he and all other taxpayers of St. Joseph County were damaged by the Commissioners' failure to secure the lowest possible bidder pursuant to state law. After cross-motions for summary judgment, the trial court entered its ruling which states in pertinent part:

> On September 10, 1992, plaintiff Brademas filed his complaint against … Commissioners and [Zappia]. He claims as an individual plaintiff damages of some $415,000.
>
> I.C. 36 1–12 [sic] provides for the letting of bids by local governmental units. I.C. 36–1–12–9 provides for the declaration of an emergency allowing for bids or quotes from at least two qualified bidders. In the present case the Board of Commissioners declared an emergency·as to a fuel tank at the Central Garage. It was replaced by B & B Equipment and found to be leaking.
>
> The Board of Commissioners then found an emergency as to the New Carlisle, Woodland, North Liberty, and Granger Garages. Bids were received from three suppliers. B & B Equipment bid $276,840; Petroleum Equipment bid $278,170; and Coffield Supply bid $252,460. The Highway Commissioner certified by letter that only B & B Equipment met the requirement of a Tokheim autho-

rized service representative. The County Engineer agreed by letter. The Board of Commissioners approved the bid on May 4, 1992. The work has been completed.

> I.C. 34–4–17–1 authorizes public lawsuits. The present suit is not for declaratory relief or injunction, but for money damages to plaintiff. Nevertheless, plaintiff purports to sue as a citizen and taxpayer under I.C. 34–4–17–3. His prayer claims damages on its face to benefit himself and not all taxpayers. Plaintiff cites no cases of a public lawsuit for money damages as opposed to a declaratory form of relief.
>
> There are no genuine issues of material fact as to the following:
>
> 1. Plaintiff brings a suit for personal damages and not for declaratory relief under I.C. 34–4–17 et seq.. Plaintiff has no standing to bring such a suit.
>
> 2. The Board of Commissioners declared an emergency as to four garages under I.C. 36–1–12–9 and accepted three bids. They accepted the bid of B & B Equipment as being the only bid conforming to specifications upon written advice of the Highway Commissioner and County Engineer. The lowest non-conforming bid was some $24,000 less.
>
> 3. There is no evidence placed before the Court that the County Attorney advised the Board of Commissioners outside the scope of his duties or in violation of rights. He is entitled under the submissions to qualified immunity.
>
> It is not necessary for the Court, in the sense of judicial deference, to reach the asserted issue of laches. Defendants are entitled to summary judgment.

### JUDGMENT

> IT IS NOW ORDERED THAT all defendants have final judgment against [Brademas] upon the complaint.

### Discussion and Decision

In general, Brademas claims the trial court erred in its findings of the relevant facts and the trial court erred as a matter of law. Brademas asserts the trial court

improperly found that the Commissioners declared an emergency for the four county highway garages gas tanks. He further contends the trial court mistakenly found that the Highway Commissioner certified B & B as the only bidder to be an authorized service representative of Tokheim. Brademas argues that, contrary to the trial court's ruling, he has standing to bring this suit because he asserts this is a public lawsuit as authorized by Indiana Code 34–4-17-1 *et. seq.* Finally, Brademas claims the trial court erroneously determined Zappia was entitled to qualified immunity. On the other hand, the Commissioners and Zappia contend that the trial court properly granted their motion for summary judgment because Brademas had no standing and Zappia was entitled to qualified immunity.

Our supreme court recently addressed the standard of review appropriate when reviewing the denial or grant of summary judgments:

> Effective January 1991, we modified the summary judgment process through amendments to T.R. 56. No longer can parties rely without specificity on the entire assembled record—depositions, answers to interrogatories, and admission—to fend off or support motions for summary judgment. It is not within a trial court's duties to search the record to construct a claim or defense for a party.
>
> To promote the expeditious resolution of lawsuits and conserve judicial resources, T.R. 56(C) now requires each party to a summary judgment motion to "designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion." In addition, the opposing party must designate to the trial court "each material issue of fact which that party asserts precludes entry of summary judgment and the evidence relevant thereto." The trial court must enter summary judgment if the "designated evidentiary matter shows that there is no genuine issue

as to any material fact and that the moving party is entitled to a judgment as a matter of law." Our 1991 amendments also prohibit appellate courts from reversing summary judgment orders on the ground that there is a genuine issue of material fact unless the material facts and relevant evidence were specifically designated to the trial court.

> On appeal, a trial court's grant of summary judgment is "clothed with a presumption of validity." The appellant bears the burden of proving that the trial court erred in determining that there are no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. [Citations omitted.]

*Rosi v. Business Furniture Corporation* (1993), Ind., 615 N.E.2d 431.

■ We first note that Brademas is proceeding *pro se.* A litigant who chooses to proceed *pro se* will be held to the same established rules of procedure that trained legal counsel are bound to follow. *Foster v. Adoption of Federspiel* (1990), Ind.App., 560 N.E.2d 691. Here, at least once, the trial court expressed its concern to Brademas that he was proceeding without counsel. Nonetheless, Brademas elected to proceed as his own attorney.

■ Indiana Code 34-4-17-1 *et seq.* allows citizens of Indiana in their capacity as citizens or as taxpayers to bring a class action to challenge public improvements by municipal corporations. *Franzen v. Carmichael* (1980), Ind.App., 398 N.E.2d 1379. The relevant section of I.C. 34-4-17-1 reads as follows:

> Sec. 1. (b) "Public lawsuit" shall mean any action whereby the validity, location, wisdom, feasibility, extent or character of construction, financing or leasing of any public improvement by any municipal corporation is questioned directly or indirectly, including but not limited to suits for declaratory judgments or injunctions to declare invalid or to enjoin such construction, financing or leasing, and shall mean any action to declare invalid or enjoin the creation, organiza-

tion or formation of any municipal corporation.

In his complaint, Brademas alleges that as a result of the Commissioners and Zappia evading the law on public works projects, he "and all other taxpayers of St. Joseph County, Indiana were damaged." He further alleges that he, "for himself and all other taxpayers in St. Joseph County, Indiana, is entitled ... to recovery of payments made under a contract in violation of Competitive Bidding Statute" and requests judgment against the Commissioners and Zappia in the amount of $415,689.83. Brademas' complaint was filed after the bidding for, and *performance* of, the public contract.

In *Pepinsky v. Monroe County Council* (1984), Ind., 461 N.E.2d 128, our supreme court discussed the appropriate use of the Public Lawsuit Statute. In *Pepinsky*, a group of citizens brought a suit expressing their concern about the public process, specifically the Open Door Law, and about the proposed plans for a new jail. Responding to the claim that the lawsuit was an action on behalf of the citizen *group* and not all fellow citizens, the court stated,

> This is not an action where the [group's] complaint seeks remedies regarding their personal or property rights. The action goes to the heart of the question concerning whether or not in the public interest the County Council should proceed with this project. The action was brought attacking the alleged failure of the public body to comply with the open door law. This is the type of action contemplated by the public lawsuit statutes. This cause could have been brought on a myriad of statutes attacking the procedures or compliances with these statutes and laws such as, but not limited to, manner in which meetings were conducted, procedure in letting and accepting bids, letting of the contracts of construction providing for the certification of the contractor to do the actual work, requiring the contractor to post the proper performance bonds and a number of other procedures required to

reach the ultimate goal of having the building constructed.

*Id.* at 134–135.

Further, in *Franzen*, 398 N.E.2d 1379, this court held that the statute requires both proper legal status and a proper cause of action before a plaintiff may prevail. Quoting *State ex rel. Sekerez v. Lake Superior Court, Rm. 4* (1975), 263 Ind. 601, 335 N.E.2d 199, 200, this court in *Franzen* stated the following:

> The legislative intent in permitting any citizen of a local community to test the need for and the extent of proposed improvements is founded on the singular hope that such actions will bring to light—prior to construction—any facts which would render the project unnecessary or improper. The desirability of discovering such problems prior to construction lies in the power of the court to enjoin or order appropriate modification of the proposed plans, thereby preventing the squandering away of the community's limited fiscal resources. It follows that a citizen who brings a public lawsuit does so on behalf of all fellow citizens, for it is to their benefit which any judgment shall accrue.

*Franzen*, 398 N.E.2d at 1381.

■ Here, Brademas does not mention in his complaint that his lawsuit was being brought pursuant to the Public Lawsuit Statute, nor did he cite to the statute in his motion for summary judgment or in his response to the Commissioners' motion for summary judgment. At the hearing on the summary judgment motions, Brademas stated, "I want to clarify for the Court, I do not seek for myself any funds, any damages whatsoever." Finally, in his appellate brief, he asserts that his lawsuit is a public lawsuit. Even assuming that the language in his complaint was sufficient initially to define his lawsuit as a public lawsuit pursuant to statute, Brademas' complaint nevertheless fails to meet the intent of the statute.

First, his complaint was filed on September 10, 1992. The tanks were removed

near the end of July 1992.[1] This court's opinion in *Franzen* stated the singular purpose of the statute is to expose any irregularities prior to performance of the public improvement. Thus, Brademas' complaint is outside the scope of the Public Lawsuit Statute.

Second, Brademas' complaint was for money damages. Again, previous cases construing the Public Lawsuit Statute have dealt with situations where the suit was being initiated prior to the completion of the project. Here, Brademas seeks recovery of the tax money used to pay the successful bidders. Because the money could only be recovered from either the public entity or the Commissioners personally[2], it follows that Brademas' complaint does not fit within the requisite intent of the statute.

■ However, our holding does not condone the actions of the Commissioners or their attorney. At oral argument, the Commissioners and Zappia conceded that they failed to declare an emergency as to the four garages. Their failure to formally declare an emergency at their meeting is evidenced in the record. Their minutes are devoid of an emergency declaration for the four garages. Boards and commissions speak or act officially only through the minutes and records made at duly organized meetings. *Jones v. State ex rel. Indiana Livestock Sanitary Bd.* (1960), 240 Ind. 230, 163 N.E.2d 605. The actions of the Commissioners and Zappia are not properly recorded in the minutes. Had Brademas' complaint been for a declaratory judgment or for a timely injunction, he would have likely avoided the summary judgment.

Because we hold the trial court properly found that Brademas did not meet the requirements of the public lawsuit statute,

we need not address the issue of Zappia's qualified immunity.

Thus, while Brademas' efforts to correct the improper procedures of St. Joseph County government are commendable, he nonetheless failed to properly bring a public lawsuit.

Affirmed.

MILLER and NAJAM, JJ., concur.

---

1. Brademas' affidavit submitted in support of his own motion for summary judgment suggests the dates of the work performed on the tanks; however, the matter is beyond certainty in the record. Further, in his response to the Commissioners' motion for summary judgment, he suggests that he had no knowledge of the work to be performed until May 1992.

2. At oral argument, Brademas stated that he sought monetary recovery for all the taxpayers of St. Joseph County from the Commissioners and Zappia personally. Further, he sought the money to be deposited in a county parks account.