Chester BORSUK and, Lake County Trust Company, As Trustee Under Trust No. 4346, Appellants (Plaintiffs below),

v.

TOWN OF ST. JOHN, Appellee (Defendant below).

No. 45S03–0405–CV–00236.

Supreme Court of Indiana.

Jan. 4, 2005.

Michael L. Muenich, Highland, IN, Attorney for Appellants.

David M. Austgen, Michael J. Phillips, Carri N. Crider, Crown Point, IN, Attorneys for Appellee.

Robert W. Eherenman, Fort Wayne, IN, Attorney for Amici Curiae.

SHEPARD, Chief Justice.

Chester Borsuk asked the Town of St. John to rezone the half of his lot presently designated residential so that the whole parcel would be commercial. He observes that the Town's comprehensive plan contemplates commercial zoning for the whole lot and argues that the denial of his request was arbitrary and capricious. The comprehensive plan is an important ground, but not the sole ground, on which the Indiana Code says such decisions should be made. We conclude that the Town could lawfully refuse Borsuk's request.

## Facts & Procedural History

Borsuk and Lake County Trust Company, as Trustee Under Trust No. 4346 ("Borsuk"), own a parcel of land on the northwest corner of the intersection of 109th Street and U.S. 41 in the Town of St. John, Lake County.[1] The western half of the parcel is zoned for residential use, and a residence sits on this half. The eastern half, zoned for commercial use, is vacant.

On September 13, 2000, Borsuk petitioned the St. John Plan Commission to rezone the entire parcel for commercial use with intentions of building a gas station on the whole parcel. Fifty-two remonstrators filed a petition with the Plan Commission to oppose the rezoning. At the commission's public meeting, the remonstrators testified about existing traffic congestion in the area and expressed concerns that rezoning would aggravate the situation. The remonstrators also feared that rezoning would compromise the safety of the residents of nearby residentially-zoned property and of the students of a local elementary school. They favored road construction to fix the traffic problem before any new commercial development. The local Comprehensive Plan does envision commercial zoning of the entire parcel at some point in the future. Moreover, every lot on Borsuks' block is zoned commercial except for the residential half of Borsuks' lot.

The Plan Commission's findings of fact stated that rezoning would not promote the public health, safety, comfort, morals, convenience, and general welfare of the Town and that the proposal would not conserve property values. The Town Council adopted the Plan Commission's recommendation and denied the rezoning.

Borsuk filed a "Petition for Writ of Certiorari" in Lake Superior Court alleging that the Town's denial effected an unconstitutional taking and was arbitrary and capricious. Borsuk moved for summary judgment, and the trial court treated the ensuing proceedings "as a full review of the St. John Plan Commission and St. John Town Council's decision." (Appellants' App. at 24). On April 9, 2003, the court entered judgment for the Town.

The Court of Appeals reversed, with instructions that the trial court order the Town to rezone the parcel. *Borsuk*, 800 N.E.2d at 223. It stated,

[T]he Town's Comprehensive Plan called for the area to be zoned commercial at some point in the future. Borsuk's parcel was the only plot of land on the entire block that was not zoned in such a manner. In such a circumstance, the municipality must—absent a compelling reason—comply with its comprehensive plan's vision and rezone the area for commercial use. Failure to do so would be equivalent to ignoring the provisions of Indiana Code section 36–7–4–603 and,

---

1. The Court of Appeals opinion contains a very useful diagram of the parcel and its immediate surroundings. *Borsuk v. Town of St. John*, 800 N.E.2d 217, 219 (Ind.Ct.App. 2003), *trans. granted*.

moreover, would render a comprehensive plan meaningless.

*Id.* We granted transfer and now affirm the trial court.

## I. Role of the Comprehensive Plan

Indiana municipalities may establish an advisory plan commission to make recommendations to the legislative body of the municipality about the physical development of the community. Ind.Code Ann. §§ 36–7–4–201, 202 (West Supp.2004).[2] Plan commissions create comprehensive plans to promote efficiency and economy in the land use development process. *See* Ind.Code Ann. § 36–7–4–501 (West 1997).[3] The Code provides a general description of these plans:

> A comprehensive plan must contain at least the following elements: (1) A statement of objectives for the future development of the jurisdiction. (2) A statement of policy for the land use development of the jurisdiction. (3) A statement of policy for the development of public ways, public places, public lands, public structures, and public utilities.

Ind.Code Ann. § 36–7–4–502 (West 1997).

■ A comprehensive plan is a general, long-term blueprint used as a "guiding and predictive force" in the physical development of a community. Charles M. Haar, *In Accordance With a Comprehensive Plan,* 68 HARV. L.REV. 1154, 1155 (1955). Social, economic, and physical conditions in a community all influence the creation of a comprehensive plan's goals and the means to be used in achieving these goals. *Id.*

The benefits of comprehensive plans are numerous. Comprehensive plans play a central role in zoning inasmuch as they rationally allocate land use with due consideration given to the community as a whole. *Udell v. Haas,* 21 N.Y.2d 463, 288 N.Y.S.2d 888, 235 N.E.2d 897, 900–01 (1968). Such plans help shape the identity of communities and give private property owners notice of this identity and expectations for the future. *See* Donna J. Patalano, *Police Power and the Public Trust: Prescriptive Zoning Through the Conflation of Two Ancient Doctrines,* 28 B.C. ENVTL. AFF. L.REV. 683, 697–98 (2001). The scope and perspective offered by comprehensive plans help alleviate the potential inefficiencies in the development of communities caused by the focused activities of different local agencies that do not coordinate with one another. Haar, 68 HARV. L.REV. at 1155.

The Indiana Code requires that the plan commission and the legislative body "pay reasonable regard to" the comprehensive plan in preparing and considering proposals to adopt initial zoning ordinances and amendments. Ind.Code Ann. §§ 36–7–4–602, 603 (West 1997). These bodies must also consider current structures and uses in each district, the most desirable use for the land, property values, and responsible growth and development. *Id.*

■ A comprehensive plan is a community's long-range vision for physical development, but implementing the plan as regards a given piece of real estate may not be the best course of action for the community on a given day. A comprehensive plan is "a guide to community development rather than an instrument of land-use control." *See* 4 Kenneth H. Young, *Anderson's American Law of Zoning,* § 23.15 (4th ed.1996); *Ogden v. Premier*

---

2. The legislative body in this case is the St. John Town Council.

3. Comprehensive plans are sometimes referred to as "master plans." *See Hawkins v. City of Richmond,* 153 Ind.App. 185, 286 N.E.2d 682 (Ind.Ct.App.1972).

*Properties, USA, Inc.,* 755 N.E.2d 661, 671 (Ind.Ct.App.2001) (deviation from the plan, standing alone, does not establish arbitrary action, especially in light of other evidence before the city council).

Thus, Indiana Code § 36–7–4–603 sensibly states that the plan commission and legislative body "shall pay reasonable regard to" a number of enumerated factors: "(1) the comprehensive plan; (2) current conditions and the character of current structures and uses in each district; (3) the most desirable use for which the land in each district is adapted; (4) the conservation of property values throughout the jurisdiction; and (5) responsible development and growth." *Id.*

■ The Court of Appeals' interpretation of the statute—that a municipality must comply with its comprehension plan's vision absent a compelling reason—attempts to create a rebuttable presumption that the statute does not erect. A municipality must consider all factors and make a balanced determination. Ind.Code Ann. § 36–7–4–603 (West 1997).

## II. Not Arbitrary and Capricious

■ Since rezoning is a legislative process, appellate review of a rezoning decision is limited to constitutionality, procedural soundness, and whether the decision was arbitrary or capricious. *Board of Comm'rs v. Three I Properties,* 787 N.E.2d 967, 976 (Ind.Ct.App.2003). A reviewing court will not intervene in a local legislative process supported by some rational basis. *Bryant v. County Council of Lake County,* 720 N.E.2d 1, 5 (Ind.Ct.App.1999). Borsuk argues that the Town ignored at least two of the statutory factors of Indiana Code § 36–7–4–603—the comprehensive plan and the current conditions and character of structures and uses—and as a result, the Town's decisions was arbitrary and capricious. (Appellants' Re-

sponse to Petition For Transfer at 6). We disagree.

The evidence indicates the plan commission and the town council did pay reasonable regard to each of the factors listed in the statute. (Appellants' App. at 853). The minutes of their respective meetings explicitly reflect that they were concerned with the existing traffic congestion at the intersection of 109th Street and U.S. 41. (Appellants' App. at 710, 826–36, 843–47). They decided that before they would rezone the lot, road construction was needed to alleviate the traffic problems and prevent frustrated drivers from using the neighborhood just west of the intersection as a shortcut. *Id.* The property values of the residences in the area also affected their decision. *Id.* These concerns provide a rational basis for the Town's legislative decision.

Even though none of these concerns address directly the considerations that led to the initial land use designation in the comprehensive plan, it does not follow that the Town ignored this statutory factor. It merely means that after weighing all of the statutory factors, the Town's balancing suggested a permissible deviation from the comprehensive plan. These concerns provide a rational basis for the Town's decision, and therefore, it is not arbitrary and capricious.

## III. An Affidavit Supplementing the Public Record

■ Borsuk has made one procedural contention about the trial court's review. The Town filed the affidavit of Charles G. Sawyer, President of the St. John Plan Commission, with its brief in response to Borsuk's motion for summary judgment. Sawyer stated various considerations of the Plan Commission in denying Borsuk's request, such as the adverse effect that increased traffic would have on the public

health, safety, morals, convenience, and general welfare of the Town. (Appellants' App. 632–35).

■ Generally, "boards and commissions speak or act officially only through the minutes and records made at duly organized meetings." *Brademas v. St. Joseph County Comm'rs*, 621 N.E.2d 1133, 1137 (Ind.Ct.App.1993). "The actions of individual members of a board or commission outside a meeting cannot be substituted for the actions at a duly constituted meeting or for the minutes thereof." *Scott v. City of Seymour*, 659 N.E.2d 585, 590 (Ind.Ct.App.1995).

■ Although evidence outside of a commission meeting offered by members of the commission cannot *substitute* for the minutes of the meeting, evidence used to *supplement* the minutes is properly admissible. *See Peavler v. Board of Comm'rs*, 528 N.E.2d 40, 48 (Ind.1988) (implying that testimony of commissioners would have been admitted if offered); *Scott*, 659 N.E.2d at 591 n. 1; *Gerbers, Ltd. v. Wells County Drainage Bd.*, 608 N.E.2d 997, 1000 (Ind.Ct.App.1993).

Indiana cases that have strictly adhered to the principle of boards speaking only through their minutes and records seem to have involved situations where the minutes or records were silent on the issue that the additional evidence sought to prove. In these cases, the courts refused to permit the use of external evidence as a substitute for the minutes.[4] In this case, the minutes do address the reasons for denying Bor-

suk's request for rezoning. (Appellants' App. at 710, 826–36, 843–47). Therefore, the trial court properly admitted Sawyer's affidavit as a supplement to the minutes of the Plan Commission and Town Council.

## IV. Unconstitutional Taking

■ Borsuk contends that the Town's denial of the rezoning request was an unconstitutional taking. His argument is that since the Town's zoning ordinance allows only one primary structure per lot, the one-half residential and one-half commercial zoning of his one lot denies him the ability to build a commercial structure because of the already existing residential structure. (Appellants' Brief at 11–13).

■ A land-use regulation does not become a taking if it substantially advances legitimate state interests and does not deny economically viable use of land. *See Nollan v. California Coastal Comm'n*, 483 U.S. 825, 834, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987); *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 127, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). Diminution in property value caused by a regulation, standing alone, cannot establish a taking. Instead, the taking issue is resolved by focusing on the uses the regulation permits. *Penn Central Trans. Co.*, 438 U.S. at 130, 98 S.Ct. 2646.

■ There has been some debate earlier in this cause over whether or not local ordinances would permit Borsuk to build a commercial structure on the commercially zoned portion of his lot.[5] As a

---

4. *See, e.g. Byer v. Town of New Castle*, 124 Ind. 86, 88, 24 N.E. 578, 579 (1890); *Carter v. Allen*, 631 N.E.2d 503, 509 (Ind.Ct.App.1994) (sustaining objection to two officers' testimony because their official acts violated statutory procedure); *Brademas v. St. Joseph County Comm'rs*, 621 N.E.2d 1133, 1137 (Ind.Ct.App. 1993); *Newman v. Spence*, 565 N.E.2d 350, 355 (Ind.Ct.App.1991); *Stallard v. Town of St. John*, 397 N.E.2d 648, 650 (Ind.Ct.App.1979).

5. About two months after Borsuk moved for summary judgment, the Town filed the affidavit of Kenneth J. Kraus, an employee of the engineering firm that represents the Town. (Appellants' App. at 5–6). Kraus declared that according to the Town's zoning ordinances, Borsuk could construct a commercial building on the half of his lot zoned commercial. (Appellants' App. at 590–91).

matter of takings law, this debate focuses on a moot point, because Borsuk derives rental income from the residence on his lot. A rented residence is certainly an economically viable use of land. *See Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1014, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). There was no taking here.

## V. Jurisdiction

On petition for transfer, the Town argues the trial court lacked subject matter jurisdiction. According to the Town, the proper procedure for challenging a rezoning decision is a declaratory judgment action, and Borsuk petitioned for writ of certiorari. We summarily affirm the Court of Appeals' holding that Borsuk did file for declaratory judgment. Ind.App. 58(A)(2).

## VI. Conclusion

We affirm the trial court.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.

When a nonmoving party fails to respond to a motion for summary judgment within 30 days by either filing a response, requesting a continuance under Trial Rule 56(I), or filing an affidavit under Trial Rule 56(F), the trial court cannot consider summary judgment filings of that party subsequent to the 30–day period. *Desai v. Croy,* 805 N.E.2d 844, 848–49 (Ind.Ct.App.2004). Since this affidavit was untimely filed, the trial court improperly admitted it into evidence. Even further, since the 30–day period lapsed with no filings, the trial court should not have admitted any of the Town's subsequent briefs or affidavits. However, Borsuk objected only to the Kraus affidavit at the trial level, and therefore, only the Kraus affidavit was improperly admitted. Its admission seems of no moment as regards the takings question.