**GPI AT DANVILLE CROSSING, L.P., Appellant–Plaintiff,**

v.

**WEST CENTRAL CONSERVANCY DISTRICT, Appellee– Defendant.**

**No. 32A01–0609–CV–395.**

Court of Appeals of Indiana.

June 6, 2007.

Rehearing Denied July 23, 2007.

Jeffrey R. Gaither, Paul D. Vink, Bryan H. Babb, Bose McKinney & Evans LLP, Indianapolis, IN, Attorneys for Appellant.

Alan M. Hux, Geoffrey Slaughter, John D. Papageorge, Debra M. Lynch, Sommer Barnard PC, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

GPI at Danville Crossing, L.P. ("GPI"), appeals from the trial court's entry of sum-

mary judgment in favor of West Central Conservancy District ("the District") on GPI's claim for injunctive relief. GPI presents two issues for our review:

1. Whether the trial court erred when it concluded that the District's classification of GPI as a "residential user" was not arbitrary and capricious.

2. Whether the trial court erred when it concluded, in effect, that the District's method of calculating penalties was not contrary to law.

We affirm in part, reverse in part, and remand with instructions.[1]

### FACTS AND PROCEDURAL HISTORY

GPI owns an apartment complex in Danville called Settler's Run. In 2001, the District began to provide sewer service to Settler's Run, and the billing was at a metered rate based on volume. Indianapolis Water Company ("IWC") was the District's billing agent. Rather than having each Settler's Run tenant billed individually, GPI was billed by a single invoice for its tenants. IWC designated Settler's Run as a commercial customer. Until March 2002, the District billed all of its customers at a metered rate, regardless of their designation as commercial or residential customers.[2]

On February 19, 2002, the District adopted Resolution No. 02–02 ("Res.02–02"), which established new, higher rates for its sewer customers. Res. 02–02 included the following relevant definitions of user classifications:

(i) "Residential User" shall mean a user of the treatment works whose premises or building is used primarily as a residence for one or more persons, including all dwelling units, etc.

(ii) "Commercial User" shall mean any establishment involved in a commercial enterprise, business or service which, based on a determination by the District, discharges primarily segregated domestic wastes or wastes from sanitary conveniences.

Appellant's App. at 363. Those definitions are the same as those used under the previous rate schedule. Res. 02–02 provides that residential users are charged a $45 flat rate per "Residential Single Family." Commercial users, meanwhile, are charged based on a metered rate.

After the passage of Res. 02–02, the District instructed IWC to continue billing its customers using the same user classifications, but at the higher rates. Because IWC had classified Settler's Run as a commercial user, IWC continued to bill Settler's Run at a metered rate. But in July 2002, the District terminated its contract with IWC, and the District began billing its customers itself. On August 29, 2002, Ron Goff, the District's Manager, wrote a letter to John Hennessey of GPI. That letter read:

On February 19, 2002, the West Central Conservancy District Board of Directors approved Rate Resolution 02–02 that amended the terms and changes of previous rate resolutions for services rendered on and after the March billing cycle of the Indianapolis Water Company. Beginning July 2002, the West Central Conservancy District office assumed the billing for West Central customers and thus obtained all billing information for review purposes. The District's review of customer information and the

---

1. We heard oral argument in this case on April 24, 2007.

2. Customers using private wells were the only ones not charged at a metered rate.

billing for Settler's Run is the reason for this letter.

Pursuant to previous rate resolutions, Settler's Run was billed utilizing a master meter size charge and consumption charge. Rate Resolution 02–02 affects this past practice of billing.

Section 1(v)(I) defines Residential User as "a user of the treatment works whose premises or building is used primarily as a residence for one or more persons, including all dwelling units, etc." *This definition includes apartment buildings and duplexes since the occupied premises in the building is used "primarily as a residence for one or more persons."* Section 3(B), 1(a) establishes the rate for residential single family units as $45.00 per billing cycle.

In accordance with Section 7(b) of the Rate Resolution, the District is electing to continue the billing of the owner of the premises.

Beginning with the September billing for sewer, Gibraltar Development Company will receive by invoice billing a total sewer charge equal to $45.00 times the number of apartment/duplex units in Settler's Run as outlined in the Rate Resolution.

Appellant's App. at 239 (emphasis added).

At the District Board's regular monthly meeting in October 2002, counsel for GPI requested that the Board "change the User Classification of the apartment complexes from residential to commercial user." *Id.* at 266. One Board member moved to approve that change, but no one seconded the motion, and it failed. Because GPI did not agree with that classification, it unilaterally decided to pay only an amount commensurate with what its bill would have been at the metered rate. As a result of its failure to pay the bills in full each month, the District has assessed penalties against GPI totaling approximately $14 million to date.[3]

On May 22, 2003, GPI and Crossman Properties, L.L.C.,[4] filed a complaint for injunctive relief against the District, and on January 8, 2004, they filed an amended complaint and application for injunctive relief. The District filed an answer and counterclaim for unpaid sewer fees and attorney's fees. On May 28, 2004, the District filed a motion for partial summary judgment as to all issues raised in GPI's amended complaint, but not as to its counterclaim. GPI filed a cross-motion for summary judgment. Following a hearing, the trial court ordered the parties to mediation, which was unsuccessful.

On March 14, 2006, GPI filed a motion for partial summary judgment on the issue of the District's method of calculating penalties for non-payment of fees. Following a hearing, the trial court entered summary judgment in favor of the District on all pending issues. That order is a final, appealable order pursuant to Indiana Trial Rule 54(B). This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

When reviewing summary judgment, this court views the same matters and issues that were before the trial court and follows the same process. *Estate of Taylor ex rel. Taylor v. Muncie Med. Investors, L.P.*, 727 N.E.2d 466, 469 (Ind.Ct. App.2000), *trans. denied.* We construe all

---

3. In addition, GPI owes the difference between the amount charged each month and the amount it opted to pay. The current amount of that balance is approximately $400,000.

4. Crossman Properties is no longer a party in this matter.

facts and reasonable inferences to be drawn from those facts in favor of the non-moving party. *Jesse v. Am. Cmty. Mut. Ins. Co.*, 725 N.E.2d 420, 423 (Ind.Ct.App. 2000), *trans. denied.* Summary judgment is appropriate when the designated evidence demonstrates that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). The purpose of summary judgment is to terminate litigation about which there can be no material factual dispute and which can be resolved as a matter of law. *Zawistoski v. Gene B. Glick Co.*, 727 N.E.2d 790, 792 (Ind.Ct.App.2000).

The trial court entered findings and conclusions in support of summary judgment. Although we are not bound by the trial court's findings and conclusions, they aid our review by providing reasons for the trial court's decision. *See Ledbetter v. Ball Mem'l Hosp.*, 724 N.E.2d 1113, 1116 (Ind.Ct.App.2000), *trans. denied.* If the trial court's entry of summary judgment can be sustained on any theory or basis in the record, we must affirm. *Id.*

### Issue One: Residential User Classification

 Our standard of review of the District's actions is whether it acted arbitrarily, capriciously, or contrary to law.[5] *Bd. of Dirs. of Bass Lake Conservancy Dist. v. Brewer*, 839 N.E.2d 699, 701 (Ind. 2005). Under this narrow standard of review, we "will not intervene in a local legislative process[, if it is] supported by some rational basis." *Id.* (citing *Borsuk v. Town of St. John*, 820 N.E.2d 118, 122 (Ind.2005)). We will find a municipal entity's action arbitrary or capricious only if it is patently unreasonable. *Id.* In short, judicial review of whether a governmental

agency has abused its rulemaking authority is highly deferential. *Id.*

GPI first contends that the definitions of residential user and commercial user in Res. 02–02 unambiguously show that GPI should be classified as a commercial user. GPI also maintains that, contrary to its intent to continue billing GPI at a metered rate, the District "reclassified" GPI as a residential user, thereby imposing a flat fee. In addition, GPI asserts that the District's stated reliance on a study of sewer usage, called the Umbaugh Report, requires that the District classify GPI as a commercial user. In essence, GPI alleges that the District's conduct evinced its intent that GPI be classified as a commercial user under Res. 02–02 and, thus, the District's decision to classify GPI as a residential user cannot stand.

The District responds that it never intended to classify GPI other than as a residential user and that GPI clearly fits within the definition of a residential user rather than a commercial user. Further, the District emphasizes that it only "considered" the Umbaugh Report and that, regardless, the report is consistent with the District's classification of GPI. The District contends that IWC's continued billing of GPI at a metered rate following the passage of Res. 02–02 was a mistake, which the District promptly corrected after it took over billing from IWC.

 Initially, we address the District's contention that GPI has failed to exhaust its administrative remedies under Indiana Code Section 36–9–23–26.1, which provides:

(a) Owners of property connected or to be connected to and served by the sewage works authorized under this chapter may file a written petition objecting to

---

5. GPI contends that a de novo review applies, but we disagree.

the rates and charges of the sewage works so long as:

(1) the petition contains the names and addresses of the petitioners;

(2) *the petitioners attended the public hearing provided under section 26 of this chapter;*

(3) *the written petition is filed with the municipal legislative body within five (5) days after the ordinance establishing the rates and charges is adopted under section 26 of this chapter; and*

(4) the written petition states specifically the ground or grounds of objection.

(b) Unless the objecting petition is abandoned, the municipal clerk shall file in the office of the clerk of the circuit or superior court of the county a copy of the rate ordinance or ordinances together with the petition. The court shall then set the matter for hearing at the earliest date possible, which must be within twenty (20) days after the filing of the petition with the court.... All interested parties shall appear in the court without further notice, and the municipality may not conduct any further proceedings concerning the rates and charges until the matters presented by the petition have been heard and determined by the court.

(Emphases added). The District contends that because GPI did not attend the public hearing regarding the proposed Res. 02–02 and did not file an objecting petition within five days after Res. 02–02 was adopted, GPI is statutorily prohibited from challenging the rates.

GPI maintains that Indiana Code Section 36–9–23–26.1 does not apply because GPI is not challenging the rates, but the District's classification of Settler's Run as a residential user. In the alternative, GPI asserts that it could not have filed a peti-

tion within five days because it was not notified that it had been classified as a residential user until six months after Res. 02–02 was passed. We address each contention in turn.

Our supreme court addressed an analogous set of circumstances in *Brewer.* In that case, a homeowner challenged the Bass Lake Conservancy District's classification of his home as a "duplex" or "multiplex" for purposes of assessing the sewer rate under the applicable ordinance. 839 N.E.2d at 701. In addressing that issue, the court stated: "In deciding these questions, we remain mindful ... that '[r]ate making is a legislative, not a judicial function.' " *Id.* And the court applied the arbitrary and capricious standard of review in its analysis of the homeowner's contentions on appeal. Thus, our supreme court considered the District's classification of the home to be within the ambit of ratemaking.

User classifications are inherent in ratemaking. Thus, the District's classification of GPI as a residential user falls under its ratemaking authority. A user, with notice, must preserve its objection to ratemaking by following the procedures set out in Indiana Code Section 36–9–23–26.1. And in a typical case, a user's failure to comply with the statute would preclude judicial review of its challenge. *See Burke v. Town of Schererville,* 739 N.E.2d 1086, 1092 (Ind.Ct.App.2000) (holding Indiana Code Section 36–9–23–26.1 provides exclusive procedure for appealing sewer connection fees), *trans. denied.* Here, however, even if GPI had attended the public hearing on Res. 02–02, nothing in the record suggests that GPI would have been on notice that the District intended to classify GPI as a residential user. The definitions of the classifications had not changed under Res. 02–02. Further, the classifications did not matter before Res. 02–02 was

passed, because all users were billed at a metered rate. And the undisputed evidence shows that GPI was not billed as a residential user under Res. 02–02 until six months after its passage. Thus, GPI had no reason to challenge its classification at the hearing or within five days after the ordinance had been adopted. Because the statute does not provide a means to challenge a classification that occurs well after a rate ordinance has been adopted, we hold on these facts that judicial review is not precluded for a failure to exhaust administrative remedies. *See Underwood v. City of Jasper Mun. Util. Serv. Bd.*, 678 N.E.2d 1280, 1285 (Ind.Ct.App.1997) (stating where no statutory remedy provided, due process and due course of law clauses of federal and state constitutions guarantee right to judicial review), *trans. denied.*

■ Turning to the merits of GPI's contentions on appeal, our analysis is limited to a determination of whether the District's classification of GPI as a residential user was arbitrary or capricious. *See Brewer*, 839 N.E.2d at 701. As long as the District acted within the scope of its statutory authority and its action was supported by some rational basis, GPI cannot prevail. *See id.* at 702. GPI contends that it should be classified as a commercial user given the definitions included in Res. 02–02. GPI also asserts that the evidence shows that at the time Res. 02–02 was passed, the District intended to classify GPI as a commercial user and, therefore, the District's "reclassification" several months later was arbitrary and capricious.

Again, Res. 02–02 includes the following definitions:

(i) "Residential User" shall mean a user of the treatment works whose premises or building is used primarily as a residence for one or more persons, including all dwelling units, etc.

(ii) "Commercial User" shall mean any establishment involved in a commercial enterprise, business or service which, based on a determination by the District, discharges primarily segregated domestic wastes or wastes from sanitary conveniences.

Appellant's App. at 363. GPI concedes that Settler's Run is "used primarily as a residence for one or more persons," but GPI maintains that it is also an "establishment involved in a commercial enterprise" which "discharges primarily segregated domestic wastes[.]" In essence, GPI asserts that Settler's Run more closely fits the definition of commercial user than residential user. We cannot agree.

■ It is well settled that when interpreting a contract, specific terms control over general terms. *Cummins v. McIntosh*, 845 N.E.2d 1097, 1106 (Ind.Ct.App. 2006), *trans. denied.* We apply that principle here. GPI argues that the general "any establishment" language controls. But we conclude that Settler's Run falls under the more specific language in the definition of residential user. In particular, an apartment building is a residence comprised of single family dwelling units. The use of the term "dwelling units" is especially telling, as that term can only pertain to an apartment building. As such, GPI's contention on this issue fails.

Next, regardless of the definitions in Res. 02–02, GPI asserts that the District's intent at the time the resolution was passed was to classify apartment buildings as commercial users. In support of that contention, GPI directs us to specific portions of the designated evidence. But our review of that evidence does not convince us that there are genuine questions of material fact about whether the District's

conduct was arbitrary and capricious.[6] First, the Umbaugh Report does not expressly state that apartment buildings are to be considered commercial users under Res. 02–02. Second, even if, as GPI contends, the Umbaugh Report shows that Settler's Run was to be considered a commercial user, there is no suggestion that the District was required to adopt each of the recommendations contained in that report. *See, e.g., Farley Neighborhood Ass'n v. Speedway*, 765 N.E.2d 1226, 1230 (Ind.2002) (holding municipality need not produce "full-scale, multi-disciplinary cost studies" as evidence to justify setting differential sewage rates). And there is no evidence that the District opted to follow each of the recommendations in the report.

In sum, GPI cannot show that the District's classification of Settler's Run was arbitrary and capricious. Indeed, GPI does not make any argument that the District lacked a rational basis for the classification. And the undisputed evidence shows that the District has classified all apartment complexes as residential users under Res. 02–02. *See Brewer*, 839 N.E.2d at 703 (noting "a consistently applied policy weighs against the notion that it is arbitrary"). Because Settler's Run fits the District's definition of residential user, it was neither arbitrary nor capricious for the District to classify it as such. *See id.*

## Issue Two: Penalties

■ GPI next contends that the District's calculation of penalties for non-payment of fees is contrary to law. GPI maintains that, by statute, the District is prohibited from compounding penalties. Indiana Code Section 36–9–23–31 provides:

> If fees assessed against real property under this chapter ... are not paid within the time fixed by the municipal legislative body, they are delinquent. *A penalty of ten percent (10%) of the amount of the fees attaches to the delinquent fees.* The amount of the fee, the penalty, and a reasonable attorney's fee may be recovered by the board in a civil action in the name of the municipality.

(Emphasis added). GPI paid only a portion of its monthly fees beginning in September 2002. Accordingly, the District imposed a 10% penalty on the unpaid fees, which it calculated "by compounding all unpaid monthly fees and past penalties each month." Brief of Appellant at 7. Thus, while the amount of unpaid fees was only $354,890 through December 2006, the District assessed penalties in the amount of $9,904,377. GPI also asserts that the District's imposition of nearly $14 million in penalties to date is excessive, unreasonable, and unconstitutional.

The District contends that its method of calculating penalties comports with the statute and is otherwise not unreasonable or unconstitutional. Moreover, the District avers that GPI has "failed to pursue its statutory appeal remedies" or to otherwise minimize its penalties. Brief of Appellee at 33. And the District maintains that Indiana Code Section 36–9–23–31 permits it "to assess a penalty on both the fee and penalty because once the penalty at-

---

**6.** The undisputed evidence shows that there was no reason to scrutinize user classifications before Res. 02–02 because both commercial and residential users were billed based on meter flow. And there is no evidence that the District specifically instructed IWC to continue billing Settler's Run at a metered rate after Res. 02–02 was enacted. The evidence shows, instead, that the District instructed IWC "to apply the new rates to the customers in accordance with their classification in IWC's system." Appellant's App. at 463. That general instruction, without a specific instruction with regard to Settler's Run, cannot support a determination that the District's conduct after it took over billing from IWC was arbitrary and capricious.

taches to the fee, it becomes part of the fee." *Id.* at 34. The District asserts that had the legislature intended to limit the penalties to only the fees, it could have expressly written that language into the statute.

The interpretation of a statute is a question of law reserved for the courts. *State v. Rans,* 739 N.E.2d 164, 166 (Ind.Ct.App. 2000), *trans. denied.* "The first and often the only step in resolving an issue of statutory interpretation is the language of the statute." *Shell Oil Co. v. Meyer,* 705 N.E.2d 962, 972 (Ind.1998). If the language of a statute is clear and unambiguous, it is not subject to judicial interpretation. *Id.* However, when the language is susceptible to more than one construction, we must construe the statute to determine the apparent legislative intent. *Id.* Our task with respect to statutory interpretation has been summarized as follows:

> We ascertain and implement legislative intent by "giving effect to the ordinary and plain meaning of the language used in the statute." The statute is examined and interpreted as a whole and the language itself is scrutinized, including the grammatical structure of the clause or sentence at issue. Within this analysis, we give words their common and ordinary meaning, without "overemphasizing a strict literal or selective reading of individual words."

*Id.* (quoting *Clifft v. Ind. Dep't of State Revenue,* 660 N.E.2d 310, 316 (Ind.1995) (citations omitted)). Nothing may be read into a statute which is not within the manifest intention of the legislature as ascertained from the plain and obvious meaning of the words of the statute. *State, Ind.*

*Civil Rights Comm'n v. Indianapolis Newspapers, Inc.,* 716 N.E.2d 943, 946 (Ind.1999) (citations omitted).

Here, we hold that the language in Indiana Code Section 36–9–23–31 is clear and unambiguous. The statute does not provide for compounding penalties. Rather, a single penalty of 10% is applied to the total amount of delinquent fees. In *Roseberry v. Huff,* 27 Ind. 12, 14 (1866), our supreme court stated, with respect to the assessment of penalties on unpaid taxes:

> The law provides for a penalty of ten per centum on delinquent taxes. Taxes once delinquent remain delinquent until they are paid. It cannot, in any legal sense, be said that taxes already delinquent, become delinquent at each successive year of their non-payment. Once delinquent, they are always delinquent until paid. *The penalty attaches to each year's taxes, as they become delinquent, but once, and interest is computed on the several sums due from the respective times fixed by law. The law does not contemplate either compound interest, or compound penalties.*

(Emphasis added). Likewise, here, Indiana Code Section 36–9–23–31 does not contemplate compounding penalties, and we will not read anything into the statute.

Still, the District contends that because it is a political subdivision that functions as a municipal legislative body, it has the authority to compound the penalties despite the language in the statute.[7] In support of that contention, the District cites to *Benjamin v. City of West Lafayette,* 701 N.E.2d 1268, 1274 (Ind.Ct.App.1998),

---

7. At oral argument, the District argued that it had authority under the Home Rule Statute to compound the penalties. *See* Ind.Code § 36–1–3–4 (stating municipalities have all powers granted by statute and "all other powers necessary or desirable in the conduct of its af-
fairs, even though not granted by statute."). But the District did not make that argument in its brief on appeal, and that contention is not supported either by cogent argument or citation to authority. *See* Ind. Appellate Rule 46(A)(8)(a).

*trans. denied,* where this court observed that "[a]lthough a municipality may not impose regulations which are in conflict with rights granted or reserved by the General Assembly, it may supplement burdens imposed by state law, provided that such additional burdens are logically consistent with the statutory purpose." The District maintains that its policy of compounding penalties is logically consistent with the purpose underlying the statute, namely, timely collection of fees.

But we conclude that there is nothing reasonable or logical about compounding penalties where the statute does not so provide. The legislature intended to penalize nonpayment of sewage fees, but limited that penalty to 10% of the total delinquent fees. As such, the District is not authorized to invoke its residual powers to compound the statutory penalty on which the Legislature has spoken. We reverse the trial court's grant of summary judgment on the issue of the amount of fees and the total penalty GPI owes the District. We remand for a hearing to determine the amount of delinquent fees owed, plus a 10% penalty on that total amount, plus reasonable attorney's fees.

Affirmed in part, reversed in part, and remanded with instructions.

MAY, J., and MATHIAS, J., concur.