**Martha S. PRESSLEY, Appellant–Plaintiff,**

v.

**NEWBURGH TOWN COUNCIL and Town of Newburgh Historic Preservation Council, Appellees–Defendants.**

No. 87A05–0801–CV–16.

Court of Appeals of Indiana.

June 9, 2008.

and purchasing umbrella insurance policies."

*See Monroe Guar.*, 816 N.E.2d at 492, 498.

Leslie C. Shively, Evansville, IN, Attorney for Appellant.

R. Thomas Bodkin, Tyler B. Engar, Bamberger, Forman, Oswald & Hahn, Evansville, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-plaintiff Martha S. Pressley appeals the trial court's grant of summary judgment in favor of appellees-defendants Newburgh Town Council (Town Council) and Town of Newburgh Historical Preservation Council (Preservation Council) (collectively, the Town). Specifically, Pressley argues that the trial court erred in denying her motion to strike an affidavit that the Town presented in support of its motion for summary judgment regarding the inclusion of her property in a historic preservation district (HPD). Moreover, Pressley claims that the designated evidence established as a matter of law that the Town failed to comply with several statutory requirements before determining that her property could be included in an HPD. Finding no error, we affirm the judgment of the trial court.

### FACTS

In 1984, the Historic Landmarks Foundation of Indiana published the Gibson County/Warrick County Interim Report (Report), which was researched and compiled pursuant to the National Historic Preservation Act of 1966. The purpose of the Report was to identify districts, buildings, structures, sites, and objects in those counties that were to be included in the preparation of a statewide preservation plan.

The Report outlined a specific procedure by which sites were to be identified according to historic or architectural merit. The procedures called for research and interviews with local historians to identify areas with a "concentration of historic fab-ric." Appellant's App. p. 119–26. Once those areas were identified, additional research and field studies were performed regarding the properties that might be designated as historical sites. Each inventoried property was "evaluated in terms of its history, architecture, environment, and integrity and then placed in one of three rating categories: outstanding (O), notable (N), or contributing (C)." *Id.*

On November 25, 1997, the Town Council—the legislative body in Newburgh—adopted Ordinance 1997–27. The ordinance created a Historic Preservation Commission (HPC) in accordance with Indiana Code section 36–11–7–4. Thereafter, on May 10, 2000, the Town Council adopted Ordinance 2000–12, which contained a requirement that notice of a public hearing be given to property owners whose property was to be considered for designation as an HPD.

On May 27, 2003, Pressley acquired a parcel of real estate in Newburgh by warranty deed. That property was included in the Report and was rated as "outstanding" based on its age and architectural merit. Moreover, the rating indicated that Pressley's property was a "potential nomination to the National Register of Historic Places," in that it satisfied "the basic criteria of possessing outstanding significance on the national, state, or local level for history, architecture, environment, and/or integrity." *Id.*

The HPC sent notice to Pressley and her counsel on March 23, 2006, that a public hearing was to be held on April 20, 2006, concerning the designation of her property as part of an HPD. At the hearing before the HPC, Frank Hijuelos, the zoning administrator in Newburgh, introduced evidence of surveys that were conducted for the purpose of identifying historic sites in the town, a map identifying Pressley's property as a potential HPD,

and evidence classifying Pressley's property to be of "outstanding" historic or architectural merit. *Id.* at 54–74, 110–16. Thereafter, on May 10, 2006, pursuant to the HPC's recommendation, the Town Council considered and adopted Ordinance 2006–10, designating Pressley's property as an HPD and approving the map setting forth the boundaries of the HPD.[1]

On June 9, 2006, Pressley filed a complaint for declaratory relief, claiming that the Town failed to comply with various statutory criteria in adopting Ordinance 2006–10, which subjected her property to the preservation ordinance and other limitations on the use and development of the property. Thus, Pressley sought to have her property removed from the HPD.

On July 24, 2007, the Town filed a motion for summary judgment, claiming that it was entitled to judgment as a matter of law because the designated evidence established that it had complied with the relevant statutes in determining that Pressley's property qualified as an HPD. In support of its motion, the Town submitted fourteen exhibits, including Hijuelos's affidavit. In relevant part, Hijuelos attested as follows:

4. At the April 20, 2006, hearing by the HPC, acting in my capacity as Administrator of the HPC, and pursuant to Rule 11 of the HPC Rules, I presented to the HPC my analysis of the application for designating the Plaintiff's Property as a[n] HPD.

5. [A]t the April 20, 2006, hearing, I introduced evidence of surveys conducted for the purpose of identifying historic sites in the Town, a map identifying the plaintiff's Property as a potential HPD, and evidence classifying such property to be of "outstanding" historic or architectural merit.

6. At the public hearing … I presented to the HPC evidence of the … Report prepared under the National Historic Preservation Act of 1966.

7. The purpose of the Report was to identify districts, buildings, structures, sites, and objects which would be included in the preparation of a state-wide preservation plan.

8. I conducted my own survey of the properties inventoried in the Report, including the Plaintiff's Property, including on-site visits and observations and updates. Notes regarding my on-site visits and observations are attached.

*Id.* at 54–55.

On September 27, 2007, Pressley filed a motion to strike Hijuelos's affidavit, claiming that it should not be considered because the sole focus of the court's inquiry must be "limited to the minutes of the meeting of the Newburgh Historic Preservation Commission." *Id.* at 24. Pressley also filed a motion for summary judgment, asserting that the Town failed to demonstrate as a matter of law that her property should have been included in the historic district. Moreover, Pressley claimed that the relevant statutory procedures had not been followed and that HPC's action was arbitrary and capricious.

On November 11, 2007, the trial court conducted a hearing and addressed all three pending motions. Thereafter, the trial court issued an order granting the Town's motion for summary judgment and denying Pressley's motions to strike the affidavit and for summary judgment. Pressley now appeals.

---

1. Pressley previously challenged the Town's action and the trial court granted partial summary judgment to the town and partial summary judgment to Pressley, resulting in the Town's enactment of Ordinance 2006–10. Appellant's App. p. 78–87.

## DISCUSSION AND DECISION

### I. Admissibility of Affidavit

■ Pressley first contends the trial court erred in considering Hijuelos's affidavit in support of the Town's motion for summary judgment. Specifically, Pressley argues that the affidavit should have been stricken from the designated evidence because "local governmental agencies ... speak only through the minutes of official meeting[s] of ... the agencies." Appellant's Br. p. 10. Therefore, Pressley claims that the trial court should have only considered the minutes of the HPC's meeting in ruling on the Town's motion for summary judgment.[2]

■ In general, boards and commissions speak or act officially only through the minutes and records made at duly organized meetings. *Borsuk v. Town of St. John,* 820 N.E.2d 118, 123 (Ind.2005). Moreover, the actions of individual members of a board or commission outside a meeting cannot be substituted for the actions at a duly constituted meeting or for the minutes thereof. *Id.* However, evidence that is introduced to *"supplement* the minutes is properly admissible." *Id.* (emphasis in original).

In this case, the affidavit concerned the identification of structures in the Town that had historical significance. As discussed above, Hijuelos presented evidence at the HPC hearing that he personally conducted a survey, performed on-site inspections of the property, and conducted extensive research regarding the designation of Pressley's property as an HPD. Appellant's App. p. 54–55. Hijuelos's affidavit was not a substitute for the minutes and meetings of the Town Council and HPC. Instead, the affidavit simply supplemented the minutes of the meeting by providing additional details regarding the survey and on-site inspections that Hijuelos performed and testified about at the meetings. Indeed, Hijuelos's personal knowledge of the matters set forth in the affidavit is reflected in the record. *Id.* at 112–16, 131–42. As a result, the trial court properly denied Pressley's motion to strike Hijuelos's affidavit.

### II. Summary Judgment

Pressley next claims that the grant of summary judgment for the Town must be set aside because the designated evidence established that the Town failed to comply "with the provisions of I.C. § 36–7–11–6 in adopting the ordinance that was applicable to ... her property." Appellant's Br. p. 6. Thus, Pressley claims that the HPC's decision to place her property within an HPD was erroneous as a matter of law because the minutes of the proceedings "are devoid of any new study warranting the inclusion of her property within the HPD." Appellant's Br. p. 9.

■ In resolving this issue, we initially observe that summary judgment is appropriate only if the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); *Bowman ex rel. Bowman v. McNary,* 853 N.E.2d 984, 988 (Ind.Ct.App.2006). We must construe all facts and reasonable inferences drawn from those facts in favor of the nonmoving party. *Id.* Our review of a summary judgment motion is limited to those materials designated to the trial court, and we must carefully review the decision on such motions to ensure that parties are not improperly denied their day in court. *Id.* All trial court rulings

---

**2.** Pressley makes no claim that Hijuelos's affidavit was not based upon his personal knowledge.

should be presumed to be correct, but in the context of summary judgment proceedings we will not hesitate to reverse a trial court's ruling if it has misconstrued or misapplied the law, failed to consider material factual disputes, or improperly considered immaterial factual disputes. *Id.*

Proceeding to the merits of Pressley's argument, we note that our General Assembly has explicitly granted authority to governmental units to "establish by ordinance, a historic preservation commission with an official name designated in the ordinance." Ind.Code § 36–7–11–4. In accordance with this statute, the Town Council adopted ordinance 1997–27 and created the HPC.

Indiana Code section 36–7–11–6 provides the mechanisms by which the HPC recommends and the Town Council implements the designation of property as an HPD:

(a) The commission shall conduct a survey to identify historic buildings, structures, and sites located within the unit. Based on its survey, the commission shall submit to the legislative body a map describing the boundaries of a historic district or historic districts. A district may be limited to the boundaries of a property containing a single building, structure, or site. The map may divide a district into primary and secondary areas.

(b) The commission shall also classify and designate on the map all buildings, structures and sites with each historic district described on the map. Buildings, structures, and sites shall be classified as historic or nonhistoric in the manner set forth in subsections (c) and (e).

(c) Buildings, structures, and sites classified as historic under this section must possess identified historic or architectural merit of a degree warrant-

ing their preservation. They may be further classified as:

(1) outstanding;

(2) notable; or

(3) contributing.

(d) In lieu of the further classifications set forth in subsection (c), the commission may devise its own system of further classification for historic buildings, structures, and sites.

(e) Nonhistoric buildings and structures are those not classified on the map as historic under subsection (b).

We further note that Indiana Code section 36–7–11–7 provides that "the map setting forth the historic district boundaries and building classifications must be submitted to, and approved in an ordinance by, the legislative body of the unit before the historic district is established and the building classifications take effect." Moreover, under Indiana Code section 36–7–11–8, "[t]he commission may conduct additional surveys, and draw and submit additional maps for approval of the legislative body, as it considers appropriate."

■ In light of these provisions, Pressley claims that the only surveys or studies were those that were conducted prior to the adoption of the ordinance in 1997. Because that ordinance did not include Pressley's property as an HPD, she argues that the HPC and Town Council were obligated to perform a separate survey and conduct a further study before a supplemental map of the area could be submitted for the inclusion of her property as an HPD.

In construing the statutory scheme set forth above, this court has determined that the statutes being reviewed are to be applied in a logical manner consistent with public policy and convenience with each section being considered with reference to all other sections. *See Alberici Constructors, Inc. v. Ohio Farmers Ins. Co.,* 866

N.E.2d 740, 743 (Ind.2007). Additionally, when a statute has not previously been construed, this court's interpretation is controlled by the express language of the statute and the rules of statutory construction. The goal is to determine, give effect to, and implement the intent of the legislature. *Ind. Dep't of Envtl. Mgmt. v. Boone County,* 803 N.E.2d 267, 273 (Ind.Ct.App. 2004). Finally, to effectuate legislative intent, we read the sections of an act together so no part of the statute is rendered meaningless if it can be harmonized with the remainder of the statute. *Alberici,* 866 N.E.2d at 743.

As discussed above, the Town Council adopted ordinance 1997–27, which created the HPC. The Town Council also followed the requirements of Indiana Code sections 36–7–11–1 through –22, which outline the procedures by which property could be designated as an HPD. Appellant's App. p. 89–90. More specifically, at the public hearing that was conducted on April 20, 2006, Hijuelos presented the Report to the HPC. *Id.* at 119–26. The Report identified districts, buildings, structures, sites, and objects that would be included in the preparation of a statewide preservation plan. *Id.* Moreover, the Report indicated that various properties were inventoried and evaluated in terms of their history, architecture, environment, and integrity and then placed in one of the three rating categories. *Id.* at 122–23. Hijuelos conducted his own survey of the properties, performed on-site visits, and updated the properties that had been inventoried. Hijuelos made notes of his observations and visits and, as the minutes reflect, the results of Hijuelos's survey and the findings from the Report were presented to the HPC at the public hearings and to the Town Council. *Id.* at 112–16, 133–40.

The Report also included a map setting forth the potential historic district boundaries as well as building classifications. Pressley's property is labeled "022" on the map, and Hijuelos presented a supplemental map and photographs that were prepared as a result of his own survey that depicted the site of Pressley's property. *Id.* at 71–73, 124, 126. Pressley's property was classified as "outstanding" with regard to its architectural and historic merit, and a photograph of the premises was also included. *Id.* at 126. Both maps were submitted to the HPC, ordinance 2006–10 was adopted, and the Town Council determined that Pressley's property should be designated as an HPD.

Although Pressley maintains that a subsequent study had to be performed before additional maps could be approved by the Town Council, there is no such statutory requirement. In particular, Indiana Code section 36–7–11–8 provides that "[t]he commission may conduct additional surveys and draw and submit additional maps for approval of the legislative body, as it considers appropriate." When examining the plain language of the statute, it is apparent that the legislature afforded discretion to commissions in determining whether or not new surveys should be conducted or whether new maps should be created from the surveys that already existed. In other words, the statute provides a mechanism by which multiple HPDs and multiple maps could be created within a commission's jurisdiction. Hence, there is simply no statutory requirement that the local legislative body must conduct a new survey or study prior to submitting a supplemental map from an area previously surveyed each time a new HPD is recommended. Even though an additional survey was conducted in this instance as evidenced by Hijuelos's affidavit and the minutes of the HPC and Town Council meetings, the designated evidence supported a determination that the Town complied with the statutory requirements

when determining that Pressley's property should be designated an HPD.

In sum, it is apparent that when the HPC was created, the Town anticipated that any number of HPDs might be created in light of its future needs. Thus, when the HPC determined that there was a need to consider Pressley's property as a potential HPD, the HPC followed the requisite statutory procedures in considering the property for inclusion in an HPD, and recommended to the Town Council that Pressley's property be designated as such. The evidence contained in the record, including the Report, Hijuelos's survey and on-site inspections, the maps adopted by the HPC, and the minutes of the meetings, supported the Town's determination that Pressley's property is of outstanding historic and architectural merit. As a result, Pressley has failed to show that the Town erred in designating her property as an HPD, and we conclude that the trial court properly granted the Town's motion for summary judgment.

The judgment of the trial court is affirmed.

RILEY, J., and ROBB, J., concur.